BANKERS TRUST COMPANY, Plaintiff,

v.

Walter FELDESMAN, Daniel Rhoades, Herman Soifer, Milton Braten, Brookfield Clothes, Inc., Brookfield Industries, Inc., Bennington Court Ltd., Braxton Ltd., Aura by Laurie, Ltd., Erwin Commercial Corp., Michael B. Marks, Inc., Timely Textiles, Inc., Todd Equipment Leasing Co., Inc., and "John Does Nos. 1–50," Defendants.

No. 82 Civ. 5590 (WCC).

United States District Court, S.D. New York.

Sept. 3, 1986.

As Amended Feb. 4, 1987.

Moses & Singer, New York City, for plaintiff; David B. Eizenman, David Rabinowitz, David B. Picker, of counsel.

Rosenman Colin Freund Lewis & Cohen, New York City, for defendant Herman Soifer; Joel W. Sternman, Eugene A. Gaer, Dorothy Heyl, of counsel.

Rhoades & Rhoades, New York City, for defendants other than Brookfield Clothes, Incorporated and Herman Soifer; Archibald A. Patterson, of counsel.

**WILLIAM C. CONNER, District Judge:**

Plaintiff Bankers Trust Company ("Bankers") commenced this action in August 1982 seeking to invoke the civil remedies of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968 (1982 & Supp. II 1984), to recover treble damages and attorney's fees for injuries suffered as a consequence of defendants' alleged bankruptcy frauds. In the spring of 1983, virtually all defendants [1] moved pursuant to rule 12(c), Fed.R. Civ.P., for judgment on the pleadings, arguing that the complaint was insufficient to state a civil claim under RICO. Defendant Herman Soifer ("Soifer") also contended that the claims against him were barred by the statute of limitations or, if not, that they could be asserted only in pending bankruptcy proceedings.

In an Opinion and Order dated June 29, 1983, I granted the moving defendants' motions for judgment on the pleadings. *Bankers Trust Co. v. Feldesman*, 566 F.Supp. 1235, 1242 (S.D.N.Y.1983), *aff'd*

*sub nom. Bankers Trust Co. v. Rhoades*, 741 F.2d 511 (2d Cir.1984), *vacated,* — U.S. ——, 105 S.Ct. 3550, 87 L.Ed.2d 673 (1985). Although I concluded that a private plaintiff seeking to invoke the civil remedies of RICO need not allege that the defendants are members of, or have ties to, organized crime, *id.* at 1239–40, I held that the plaintiff must allege that he has suffered a distinct RICO injury as opposed merely to a direct injury from the underlying predicate acts, *id.* at 1240–42. Because I found that Bankers' injuries were the direct result of the underlying predicate acts, and not a consequence of any independent pattern of racketeering activity, *id.* at 1242, I granted the moving defendants' motions to dismiss without considering the additional grounds advanced in support of the motions, *id.* at 1242 & n. 10.

Bankers appealed to the Second Circuit, and in July 1984, that court affirmed my decision. *Bankers Trust Co. v. Rhoades*, 741 F.2d 511 (2d Cir.1984), *vacated,* — U.S. ——, 105 S.Ct. 3550, 87 L.Ed.2d 673 (1985). In July 1985, the Supreme Court decided two unrelated RICO actions, *Sedima, S.P.R.L. v. Imrex Co.,* — U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 349 (1985), and *American National Bank & Trust Co. v. Haroco, Inc.,* — U.S. ——, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). The Supreme Court also summarily vacated the Second Circuit's decision in this case and remanded the action to the court of appeals "for further consideration in light of" the Supreme Court's other RICO decisions. — U.S. ——, 105 S.Ct. 3550, 87 L.Ed.2d 673 (1985). By order dated September 23, 1985, the Second Circuit vacated my Opinion and Order and remanded the matter to me for further consideration of defendants' motions in light of the Supreme Court's actions in *Sedima* and *Haroco*. 779 F.2d 36 (2d Cir.1985) (mem.).

Following remand, defendants renewed their motions to dismiss on the additional grounds that I had previously found it un-

---

1. Plaintiff had dismissed its claims against defendant Walter Feldesman by stipulation endorsed by the Court on March 4, 1983. Defend- ant Brookfield Clothes, Incorporated did not join in the motions of the other defendants.

necessary to consider, and I permitted the parties to file briefs supplementing their earlier submissions. I have carefully considered the parties' submissions, and for the reasons set forth below, defendants' motions are granted in part and denied in part as indicated.

*Background*

The allegations of the complaint, which must be accepted as true for purposes of the present motions, *George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.*, 554 F.2d 551, 553 (2d Cir.1977); *Gumer v. Shearson, Hammill & Co., Inc.*, 516 F.2d 283, 286 (2d Cir.1974), are as follows: The principal actors in the scheme to defraud Bankers were the Braten Apparel Corporation ("BAC"), a corporation that owed Bankers some $4,000,000; defendant Milton Braten ("Braten"), an officer and principal shareholder of BAC; defendant Daniel Rhoades ("Rhoades"), an officer, director, and/or shareholder of BAC, and an attorney for BAC and Braten; defendant Soifer, a shareholder of BAC; and Walter Feldesman ("Feldesman"), an attorney who represented BAC, Soifer, and defendant Brookfield Clothes, Incorporated ("Brookfield"). Braten, Rhoades, and Soifer were also officers, directors, and/or shareholders of all of the other corporate defendants named in the complaint.

In August 1974, at a time when BAC had recently sustained severe financial losses and owed substantial debts to Bankers and others, BAC acquired all of the stock of Brookfield, which at that time had a net worth of more than $3,000,000. Complaint ¶ 11. Braten, Soifer, and Feldesman allegedly made a secret agreement to conceal this acquisition for the purpose of obtaining a favorable discharge of BAC's debts by pursuing chapter XI proceedings in the bankruptcy court. *Id.* ¶ 13

To implement the plan, Braten and Soifer executed a sham "Shareholder's Agreement," drafted by Feldesman, which provided that if BAC or Braten did not furnish a $250,000 loan to Brookfield by a specified date, BAC's stock in Brookfield would automatically be transferred to Soifer. *Id.*

¶¶ 14–15. At the time this agreement was entered into, Braten, Feldesman, and Soifer knew that the funding condition would not be met. They intended that Soifer would hold the stock of Brookfield, safe from the claims of BAC's creditors, only during BAC's bankruptcy proceedings; Soifer was to return the stock to BAC following the corporation's discharge in bankruptcy. *Id.* ¶¶ 16–17.

On September 5, 1974, BAC's stock in Brookfield was transferred to Soifer and BAC filed its petition in bankruptcy. *Id.* ¶ 18. BAC did not list the Brookfield stock as an asset. *Id.* Braten, Rhoades, Soifer, and Feldesman thereafter affirmatively misrepresented to Bankers and the bankruptcy court that BAC had, through failure to meet the Shareholder's Agreement funding condition, lost its ownership of the Brookfield stock. *Id.* ¶¶ 19–20. Through this and related misrepresentations, Feldesman and the individual defendants induced BAC's creditors, including Bankers, to approve a plan of arrangement under which Bankers would receive only 17.5% of its claims and BAC would be relieved of more than $4.3 million of its debts. *Id.* ¶¶ 21–22. Had BAC's stock in Brookfield been included in BAC's plan of arrangement, BAC would have had assets sufficient to satisfy Bankers' claims in full. *Id.* ¶¶ 23–24.

BAC's plan of arrangement was approved by the bankruptcy court on March 12, 1976. *Id.* ¶ 22. In August 1976, Soifer returned the Brookfield stock to BAC through a complicated sequence of stock transfers. *Id.* ¶ 25. Soifer, Braten, and Rhoades then revealed to Brookfield's auditors that BAC had in fact owned this stock all along. *Id.* ¶ 26. In October 1976, Soifer purchased 45% of the stock of BAC. *Id.* ¶ 27. In July 1977, Soifer gave Braten a $450,000 note in part payment for the BAC stock. *Id.*

In September 1976, Bankers commenced a proceeding in the bankruptcy court under section 386 of the Bankruptcy Act of 1898, former 11 U.S.C. § 786, to revoke the confirmation of BAC's plan of arrangement because of the fraudulent concealment of

BAC's ownership of the Brookfield stock. *Id.* ¶ 28. On June 25, 1982, following lengthy proceedings including a trial, the bankruptcy court revoked the confirmation, *see In re Braten Apparel Corp.*, 21 B.R. 239 (Bankr.S.D.N.Y.1982), finding that the individual defendants had devised and carried out a scheme to defraud by making false statements and oaths in BAC's listing of the assets of the estate, and by intentionally concealing property of BAC. *Id.* ¶¶ 42–43. The bankruptcy court ordered BAC to "offer a plan which is realistic ... in light of the fact that [it] owns a valuable asset—Brookfield." 21 B.R. at 263. The bankruptcy court's decision was affirmed by the district court, *In re Braten Apparel Corp.*, 26 B.R. 1009 (S.D.N.Y.1983), and the district court's decision was affirmed by the court of appeals by summary order entered on September 1, 1983, *In re Braten Apparel Corp.*, 742 F.2d 1435 (2d Cir. 1983) (mem.).

In the meantime, however, BAC had entered into a new scheme to protect many of its assets from its creditors. Its principal action, again, was to transfer its stock in Brookfield. *Id.* ¶ 41. In January 1982, defendant Bennington Court Limited ("Bennington") borrowed almost nine million dollars from KB Business Credit, Incorporated ("KBBC"), a financing company. *Id.* ¶ 36. Bennington then gave these funds to several of the other defendants in this case. *Id.* When the funds were not repaid, KBBC brought a civil RICO action for treble damages against BAC, Braten, Rhoades, and others. *Id.* ¶¶ 37–38. The defendants quickly settled the lawsuit by having BAC convey its stock in Brookfield—for little or no consideration—to defendant Todd Equipment Leasing Company, Incorporated ("Todd"), which in turn pledged the stock to KBBC. *Id.* ¶¶ 39–40. As a result, BAC was able to frustrate Bankers' attempt in the bankruptcy court to obtain some benefit from BAC's earlier ownership of the stock of Brookfield.

Bankers also alleges that during the perpetration of BAC's initial bankruptcy fraud, BAC and the individual defendants instituted several frivolous lawsuits against Bankers in New York state court, alleging that Bankers had breached a commitment to extend additional credit to BAC and seeking millions of dollars in damages. *Id.* ¶ 29. The only purpose of these suits was to hinder Bankers' collection of the debt owed to it by BAC. *Id.* Each suit was summarily dismissed, but not before Bankers had incurred substantial legal expenses. *Id.*

In August 1977, BAC instituted an action against Bankers in South Carolina based on claims similar to those asserted in the New York actions, seeking $195 million in damages. *Id.* ¶ 30. Braten brought another action in South Carolina, asserting claims, allegedly superior to those of Bankers, to funds in an escrow account derived from the sale of machinery in which Bankers had a security interest. *Id.* Rhoades acted as counsel to a South Carolina law firm representing BAC and Braten in these actions and, according to the complaint, proceeded to bribe William H. Ballenger, the judge before whom the actions were pending. *Id.* ¶¶ 30–34.

Rhoades allegedly used a South Carolina corporation formed by him to assume a mortgage debt on which Judge Ballenger was personally liable to the extent of $100,000. *Id.* ¶ 32. Rhoades thereafter made payments on the debt as installments came due. *Id.* Rhoades' actions induced Judge Ballenger to render at least two decisions favorable to Braten and BAC: (1) in Braten's action to collect from the escrow account, Judge Ballenger appointed a former partner of the law firm to which Rhoades was counsel as a "special referee" with the power to deny Bankers a jury trial; and (2) in BAC's $195 million damage action, Judge Ballenger arbitrarily denied Bankers' motion to dismiss. *Id.* ¶ 33. Judge Ballenger eventually recused himself from the escrow account action after citing a "possible conflict of interest," and his special referee resigned. *Id.* ¶ 34. In the BAC action, the South Carolina Supreme Court reversed Judge Ballenger's denial of Bankers' motion to dismiss as an abuse of discretion. *Id.* In the meantime, however,

Bankers had expended more than $100,000 in defending the South Carolina cases. *Id.*

*Discussion*

As noted above, the moving defendants advance a number of grounds in support of their motion for judgment on the pleadings: (1) Bankers has not adequately alleged a pattern of racketeering activity, (2) Bankers' RICO claim belongs to BAC and may be asserted only by BAC's trustee in the pending bankruptcy proceeding, and (3) Bankers' RICO claim is time-barred regardless of which statute of limitations is applicable. I address each of these arguments in turn below.

*Pattern Allegations*

Each defendant has moved for judgment on the pleadings on the ground that Bankers has not adequately alleged a pattern of racketeering activity as required by RICO. Section 1964(c) provides a civil remedy to "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c) (1982). Section 1962 makes it unlawful (1) to use income derived from a "pattern of racketeering activity" to acquire an interest in or establish an enterprise engaged in or affecting interstate commerce, *id.* § 1962(a); (2) to acquire or maintain an interest in such an enterprise "through" a pattern of racketeering activity, *id.* § 1962(b); or (3) to conduct or participate in the conduct of such an enterprise through a pattern of racketeering activity, *id.* § 1962(c). *Sedima,* 105 S.Ct. at 3278. Section 1962(d) prohibits conspiring to violate any of these three provisions. *Id.* A "pattern of racketeering activity" "requires" the commission of "at least two acts of racketeering activity." 18 U.S.C. § 1961(5). The enumerated acts of racketeering activity include nine

state law felonies and the violation of more than 25 federal statutes. *Id.* § 1961(1).

Bankers has alleged that defendants violated each of the three subdivisions of section 1962 and conspired to do so. Complaint ¶¶ 50–53. Bankers contends that it has sufficiently alleged a pattern consisting of three acts of bankruptcy fraud and one act of bribery: (1) the fraudulent conveyance of the Brookfield stock to Soifer in 1974 in contemplation of BAC's bankruptcy, Complaint ¶¶ 44, 49; (2) the making of false oaths in BAC's schedules and the giving of false testimony under the penalty of perjury, Complaint ¶¶ 45, 49; (3) the 1982 conveyance of the Brookfield stock to Todd and Todd's pledging that stock to relieve the defendants of personal liability in connection with the KBBC lawsuit, Complaint ¶¶ 48–49; and (4) the bribery of Judge Ballenger, Complaint ¶¶ 47, 49.

Soifer contends that Bankers has not alleged that he committed two predicate acts. There is no dispute that he is named in the complaint in connection with the first two predicate acts listed above. *See* Complaint ¶¶ 11–20. It is equally clear that there are no allegations directly implicating Soifer in the commission of predicate acts three and four above. Indeed, the complaint does not allege that he played any active role in the scheme to defraud Bankers after the confirmation of BAC's plan of arrangement in 1976.[2]

Soifer asserts that even though he is alleged to have participated in both the initial fraudulent conveyance and the subsequent concealment of the Brookfield stock, those acts are in reality a single offense. Soifer argues that Bankers has impermissibly attempted to split a single violation of the bankruptcy fraud statute, 18 U.S.C. § 152 (1982), into separate of-

---

**2.** Bankers' allegations with respect to the 1982 bankruptcy fraud are contained in paragraphs 36 through 40 of the complaint. These paragraphs contain only one indirect reference to Soifer. He is one of several people alleged to have been a beneficial owner of Capital Aid Corporation; that corporation in turn is alleged to have owned Todd, the company through which the Brookfield stock was pledged to KBBC. Bankers does not allege that Soifer re-

ceived any of the funds borrowed from KBBC, and Soifer was not named as a defendant in the KBBC lawsuit. Similarly, the allegations concerning the frivolous lawsuits and the bribery of Judge Ballenger are contained in paragraphs 29 through 34 of the complaint. These paragraphs make no reference to Soifer, either direct or indirect. All of the allegations concern Braten, Rhoades, and BAC.

fenses in order to allege the requisite two predicate acts. He contends that the commission of multiple acts proscribed by § 152 constitutes a single criminal offense so long as the acts involve the same asset of the debtor. Supplemental Reply Memorandum of Law of Defendant Herman Soifer at 3. I disagree.

■ It is well settled that violations of more than one provision of § 152 are separately indictable offenses even if they pertain to the same asset of the debtor. *See, e.g., United States v. Gordon,* 379 F.2d 788, 790 (2d Cir.), *cert. denied,* 389 U.S. 927, 88 S.Ct. 286, 19 L.Ed.2d 277 (1967). In *Gordon,* our court of appeals observed that the separate paragraphs of the bankruptcy fraud statute, 18 U.S.C. § 152 (1982), "create separate crimes, the violation of which may be indicted separately." 379 F.2d at 790. It is true that a defendant cannot be separately convicted of violating § 152 by concealing an asset during bankruptcy, and of violating § 152 by filing a schedule with the bankruptcy court that is false because it does not disclose the same asset. *See, e.g., United States v. Ambrosiani,* 610 F.2d 65, 68–69 (1st Cir.1979), *cert. denied,* 445 U.S. 930, 100 S.Ct. 1318, 63 L.Ed.2d 763 (1980). The filing of the false schedule is simply the means by which the asset was concealed during bankruptcy. However, it is clear that a defendant may be separately indicted for fraudulently transferring an asset and subsequently concealing the same asset by making false statements. *See Gordon,* 379 F.2d at 790; *accord Ambrosiani,* 610 F.2d at 68. This is precisely the situation presented here. Bankers has alleged that the Brookfield stock was fraudulently conveyed to Soifer who concealed it in contemplation of BAC's bankruptcy, and that Soifer concealed the stock from BAC's trustee and the bankruptcy court during bankruptcy by making false statements. There can be little doubt that this is sufficient to allege two separate violations of the bankruptcy fraud statute, and hence two separate acts of racketeering activity.

■ Soifer next contends that even if Bankers has adequately alleged two separate acts of racketeering activity, those acts do not constitute a pattern. He relies on a number of post-*Sedima* decisions embellishing (and thereby narrowing) RICO's pattern requirement. These cases represent the latest attempt to limit the "extraordinary uses to which civil RICO has been put," *Sedima,* 105 S.Ct. at 3287. I am not unsympathetic to the desire of federal judges "to dam the flood of civil RICO cases which on their face look like basic common law breach of contract and fraud cases." *Papai v. Cremosnik,* 635 F.Supp. 1402, 1406 (N.D.Ill.1986). Indeed, as noted above, this Court was among many courts in holding pre-*Sedima* that RICO required proof of a racketeering injury and not merely a direct injury from the underlying predicate acts. Other courts focused on other doctrines in order to limit the reach of the statute. For example, some courts required a "nexus to organized crime," *see, e.g., Moss v. Morgan Stanley Inc.,* 553 F.Supp. 1347, 1361 (S.D.N.Y.), *aff'd on other grounds,* 719 F.2d 5 (2d Cir.1983), *cert. denied,* 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984); *Noonan v. Granville-Smith,* 537 F.Supp. 23, 29 (S.D.N.Y.1981); *Barr v. WUI/TAS, Inc.,* 66 F.R.D. 109, 112–13 (S.D.N.Y.1975), while other courts sought to limit "enterprise" to "legitimate business enterprises," *see, e.g., United States v. Turkette,* 632 F.2d 896, 903 (1st Cir.1980), *rev'd,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981).

However, the Supreme Court in *Sedima* stated clearly that such doctrines have no reasonable basis in the language of the statute, 105 S.Ct. at 3284–85, and that any change in the statute must come from Congress, *id.* at 3287. The Court also emphasized:

RICO is to be read broadly. This is the lesson not only of Congress' self-consciously expansive language and overall approach, but also of its express admonition that RICO is to "be liberally construed to effectuate its remedial purposes." The statute's "remedial purposes" are nowhere more evident than in

the provision of a private action for those injured by racketeering activity.

105 S.Ct. at 3286 (citations omitted).

Despite this clear admonition, some courts have construed other language in *Sedima* as an invitation to continue the restriction of the statute on the "pattern" front. In particular, they have focused on the Court's observation that "[t]he 'extraordinary' uses to which civil RICO has been put appear to be primarily the result of the breadth of the predicate offense, in particular the inclusion of wire, mail, and securities fraud, and the failure of Congress and the courts to develop a meaningful concept of 'pattern,' " 105 S.Ct. at 3287. They also rely on the Court's comments in footnote 14. There the Court stated:

As many commentators have pointed out, the definition of a "pattern of racketeering activity" differs from the other provisions in § 1961 in that it states that a pattern *"requires* at least two acts of racketeering activity," § 1961(5) (emphasis added), not that it "means" two such acts. The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance, two of anything do not generally form a "pattern." The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." S.Rep. No. 91–617, p. 158 (1969) (emphasis added). Similarly, the sponsor of the Senate bill, after quoting this portion of the Report, pointed out to his colleagues that "[t]he term 'pattern' *itself requires the showing of a relationship*.... So, therefore, proof of two acts of racketeering activity, without more, does not establish a pattern...." 116 Cong.Rec. 18940 (1970) (statement of Sen. McClellan). See also *id.*, at 35193 (statement of Rep. Poff) (RICO "not

aimed at the isolated offender"); House Hearings, at 665. Significantly, in defining "pattern" in a later provision of the same bill, Congress was more enlightening: "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." 18 U.S.C. § 3575(e). This language may be useful in interpreting other sections of the Act. Cf. *Iannelli v. United States*, 420 U.S. 770, 789, 95 S.Ct. 1284, 1295, 43 L.Ed.2d 616 (1975).

*Sedima*, 105 S.Ct. at 3285 n. 14 (emphasis in original).

The courts that have adopted a restrictive view of pattern have focused principally upon the reference to "continuity" in footnote 14, and have concluded that "pattern" requires multiple criminal "episodes" or "transactions" "sufficiently unconnected in time" yet not "isolated" or "sporadic." *See, e.g., Frankart Distributors, Inc. v. RMR Advertising, Inc.*, 632 F.Supp. 1198, 1200–01 (S.D.N.Y.1986); *Soper v. Simmons Int'l, Ltd.*, 632 F.Supp. 244, 253–54 (S.D.N.Y.1986).

Other courts reject this restrictive view. They focus mainly on the perceived concern in footnote 14 that RICO not be used to reach sporadic or isolated activity, and require only that the predicate acts be related. *See, e.g., Conan Properties v. Mattel, Inc.*, 619 F.Supp. 1167, 1171 (S.D.N.Y. 1985).

For a number of reasons, I find myself in agreement with this less restrictive approach. First, footnote 14 simply is not a basis for the doctrine that has arisen from it. The footnote makes no mention of multiple "episodes," "transactions," or "schemes." The primary if not the sole focus of footnote 14 is on the need for some relationship between the predicate acts constituting the pattern. Thus, the Court quotes 18 U.S.C. § 3575(e) (1982), which requires only a connection between

criminal acts. In addition, the Court quotes the Senate Report on RICO as supportive of the proposition that "two isolated acts of racketeering activity do not constitute a pattern." The Senate Report states:

> The concept of "pattern" is essential to the operation of the statute. *One isolated "racketeering activity" was thought insufficient* to trigger the remedies provided ... largely because the net would be too large and the remedies disproportionate to the gravity of the offense. The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires *more than one 'racketeering activity' and the threat of continuing activity* to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern.

*Organized Crime Control Act of 1969,* S.Rep. No. 617, 91st Cong., 1st Sess. 158 (1969) (emphasis added). It seems clear from this language that the continuity aspect is satisfied by the existence of a second predicate act, and that the relationship aspect is satisfied by some connection between the acts.

Second, the so-called "episode" test is vague and unpredictable. As Judge John F. Grady observed in *Brainerd & Bridges v. Weingoff Enterprises, Inc.,* No. 85 Civ. 493 (JFG) (N.D.Ill. July 22, 1986), some courts have found one episode in fact situations where others have not, leading to inconsistent results. In addition, the episode test places undue emphasis on the way predicate offenses are portrayed in pleadings. *See Litigating the Pattern Element in Civil RICO Cases,* Nat'l L.J., Sept. 1, 1986, at 20. Finally, I am concerned that the episode test is overbroad, and may eliminate from RICO's ambit some cases Congress surely meant to include. For example, under the episode test an act of arson followed by an attempt to extort money from the victim by telephone would undoubtedly be considered a single episode, yet surely this is the sort of conduct that Congress sought to reach. I agree with Judge Grady that the "episode"

test smacks of an "I know it when I see it" approach, and find such a vague and unpredictable test unacceptable. *See Brainerd & Bridges,* slip op. at 16. Accordingly, I conclude that until Congress indicates otherwise, a pattern of racketeering activity is alleged when a plaintiff claims two or more connected criminal acts listed in § 1961(1). *Accord Conan Properties v. Mattel, Inc.,* 619 F.Supp. 1167, 1171 (S.D.N.Y.1985); *see also Bank of Am. Nat'l Trust & Sav. Ass'n v. Touche Ross & Co.,* 782 F.2d 966, 971 (11th Cir.1986); *R.A.G.S. Couture, Inc. v. Hyatt,* 774 F.2d 1350, 1355 (5th Cir.1985); *Tryco Trucking Co., Inc. v. Belk Stores Servs., Inc.,* 634 F.Supp. 1327, 1334 (W.D. N.C.1986).

■ Under this standard, Bankers' pattern allegations are clearly sufficient. Bankers has alleged that the Brookfield stock was fraudulently conveyed to Soifer who concealed it in contemplation of BAC's bankruptcy, and that Soifer concealed the stock from BAC's trustee and the bankruptcy court during bankruptcy by making false statements. Each of these acts constituted bankruptcy fraud, and the acts are clearly connected.

■ As noted above, Braten and Rhoades also challenge the sufficiency of Bankers' pattern allegations. They press the same points as Soifer. These arguments are even more unavailing when applied to the allegations against these defendants. Braten and Rhoades are alleged to have played major roles in the commission of each of the four predicate acts set out above. There is no question that Bankers has adequately alleged a pattern as to Braten and Rhoades.

■ The situation with respect to the other moving defendants is quite different, however. These defendants are various corporate entities of which Braten, Rhoades, and Soifer are alleged to be officers, directors, and/or shareholders and for which Rhoades served as counsel. The only specific references to any of these defendants are in connection with the 1982 bankruptcy fraud. Some of them are nev-

er mentioned by name. Because the complaint contains numerous collective references to "the defendants," it is impossible to determine whether they are alleged to have played any part in the initial bankruptcy fraud or the bribery of Judge Ballenger. Standing alone, the pledging of the Brookfield stock in 1982 is insufficient to constitute a RICO pattern. Accordingly, Bankers' complaint is dismissed as against the corporate defendants for failure to allege a pattern of racketeering activity with sufficient particularity. Bankers may replead within thirty days if it can allege with more specificity that any of these defendants actively engaged in two or more predicate acts of racketeering activity. If Bankers chooses to replead, it should separately number and state its allegations as to each corporate defendant, rather than lumping them together and referring to them collectively as "the defendants."

### Standing to Assert the RICO Claim

Defendants next contend that Bankers' RICO claim belongs to BAC, and may be asserted only by BAC's trustee in the pending bankruptcy proceeding. This contention is also without merit. *Rand v. Anaconda-Ericsson, Inc.,* 794 F.2d 843 (2d Cir.1986), and *Loeb v. Eastman Kodak Co.,* 183 F. 704 (3d Cir.1910), on which defendants rely, hold that an action to redress injuries to a corporation cannot be maintained by a creditor or a shareholder in his own name, but rather must be brought in the name of the corporation. However, those cases are inapposite. In this case, Bankers is not suing derivatively to redress injuries to BAC, but rather to redress injuries Bankers suffered in its own right. BAC was not harmed by the 1976 bankruptcy fraud. It had more assets after the confirmation that it would have had absent defendants' fraudulent acts. Moreover, Bankers' RICO claim is also based upon the bribery of Judge Ballenger, which caused Bankers to expend more than $100,000 in defending frivolous lawsuits. Defendants engaged in these acts to benefit BAC, not to harm it, and the resulting injury was suffered only by Bankers and not by BAC. Defendants' contention that "legal expense is not damage" is clearly meritless. Accordingly, I conclude that Bankers does not lack standing to assert the instant civil RICO claim.

### The Statute of Limitations for Civil RICO Claims

Finally, defendants contend that Bankers' RICO claim is barred by the applicable statute of limitations. The Racketeer Influenced and Corrupt Organizations Act does not contain a specific statute of limitations governing civil RICO actions—" 'a void which is commonplace in federal statutory law.' " *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985) (quoting *Board of Regents v. Tomanio,* 446 U.S. 478, 483, 100 S.Ct. 1790, 1794, 64 L.Ed.2d 440 (1980) ). When Congress has not established a limitation period for a federal cause of action, the settled practice is to "borrow" the most analogous statute of limitations of the forum state if it is not inconsistent with federal law or policy to do so. *See, e.g., id.* at 1942–43; *Board of Regents v. Tomanio,* 446 U.S. 478, 483–84, 488, 100 S.Ct. 1790, 1794–95, 1797, 64 L.Ed.2d 440 (1980); *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975); *see generally* Note, *Limitation Borrowing in Federal Courts,* 77 Mich.L.Rev. 1127 (1979).

Defendants urge the Court to apply the three-year New York statute of limitations governing actions to enforce a liability created by statute, N.Y.Civ.Prac.Law § 214(2) (McKinney 1972). They rely on *Durante Bros. & Sons, Inc. v. Flushing National Bank,* 755 F.2d 239 (2d Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 3530, 87 L.Ed.2d 654 (1985), for the proposition that § 214(2) is to be applied to all civil RICO claims arising in New York regardless of the factual basis of the particular claim. On the other hand, Bankers would have the Court apply the six-year New York statute of limitations governing actions based on fraud, N.Y.Civ.Prac.Law § 213(8) (McKin-

ney 1972). It contends that *Durante* does not endorse the uniform application of a three-year statute of limitations to all civil RICO actions. According to Bankers, courts must instead select an appropriate limitation period for each RICO claim based upon the nature of the underlying predicate acts.

Unfortunately, *Durante*, the only case in which our court of appeals has considered the borrowing of statutes of limitations for RICO claims, does not resolve this question. In *Durante*, the plaintiff brought a civil RICO action predicated upon the alleged collection of an unlawful debt. The district court concluded that the most analogous statute of limitations was the one-year New York statute governing actions to recover an overcharge of interest, N.Y.Civ.Prac.Law § 215(6) (McKinney 1972), and dismissed the plaintiff's suit as time-barred. The court of appeals reversed. It pointed out that the district court's seemingly apt analogy dissolved when the elements of the RICO claim were closely examined. The court observed that the plaintiff would have to prove no fewer than ten elements to make out his RICO claim while he could establish a state law claim governed by § 215(6) by proving only one of them. The court then concluded,

> There being no state law analog to the present civil RICO claim, we conclude that the most appropriate state statute of limitations is that found in CPLR § 214(2), governing actions to enforce a liability created by statute.

755 F.2d at 249.

Since *Durante* was decided, three judges in this district have addressed the borrowing of statutes of limitations for civil RICO actions. Each judge was faced with the difficult question of whether a uniform statute of limitations should be applied to all RICO claims or whether the appropriate limitation period should be determined on a case-by-case basis. In *Fustok v. Conti-Commodity Services, Inc.*, 618 F.Supp. 1076 (S.D.N.Y.1985), the plaintiff brought a civil RICO action alleging that various defendants had engaged in a pattern of racketeering activity through the commission of predicate acts of mail and wire fraud. On the eve of trial, the defendants moved to dismiss the RICO claim as time-barred, relying on *Durante* for the proposition that the three-year limitation period of CPLR § 214(2) is uniformly applicable to all civil RICO claims regardless of the underlying predicate offense. The plaintiff opposed the motion, arguing that the statute of limitations applicable to civil RICO claims varies with the offense underlying each RICO claim. Judge Lasker noted that he found the *Durante* opinion "puzzling in that it [was] not clear to [him] whether the court intended to establish a general rule for RICO limitation periods," and observed that "in any event the opinion does not state a rule of general applicability *in haec verba*." 618 F.Supp. at 1081. Because *Durante* did not settle the question before him, Judge Lasker turned to the pre-*Durante* decisions of the district judges in this circuit, and to district and circuit court decisions in other circuits. Although he found both groups of decisions divided, he nonetheless concluded that there was "considerable authority ... to support the proposition that the New York statute of limitations governing the state action which most closely resembles the basis for the RICO claim should apply." *Id.* Judge Lasker therefore chose the six-year New York period of limitation governing actions based on fraud.[3]

---

**3.** It is not clear to what extent Judge Lasker based his decision on "strong, practical considerations." Judge Lasker noted that the case was "about ready to go to trial," "that the bulk of discovery [had] been completed," and that proof of the RICO allegations would not add significantly to the length of the trial. In contrast, he observed that "[d]ismissal of the RICO claim would run the risk of a costly retrial in the event that the Court of Appeals subsequently clarifies its position on the appropriate limitations period in agreement with plaintiff's understanding." "Bearing in mind these legal and policy considerations," Judge Lasker concluded that the motion to dismiss the RICO claim as time-barred should be denied. 618 F.Supp. at 1081.

In *Von Bulow v. Von Bulow*, 634 F.Supp. 1284 (S.D.N.Y.1986), Judge Walker was faced with the same question that had arisen in *Fustock*. He found it unnecessary to resolve the issue, however, because he concluded that, due to tolling, the action was timely regardless of what period was applicable. Nonetheless, Judge Walker noted in dictum that he was "inclined to the view that the Second Circuit did not intend a uniform rule and to agree with Judge Lasker in *Fustock*." *Id.* at 1301.

The only other post-*Durante* decision in this district to address the appropriate statute of limitations to apply to civil RICO claims is *Bartels v. Clayton Brokerage Co. of St. Louis, Inc.*, 631 F.Supp. 442 (S.D.N.Y.1986). The plaintiffs in *Bartels* brought a civil RICO action alleging that defendants had committed predicate acts of mail and wire fraud in furtherance of a commodities fraud scheme. While acknowledging that the general rule when a federal statute does not specify a limitation period is to borrow an analogous state statute of limitations, Judge Goettel observed that "when federal policies are at stake, courts have not hesitated to look for a timeliness rule in federal law that provides a closer analogy." *Id.* at 449 (citing *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 171–72, 103 S.Ct. 2281, 2294–95, 76 L.Ed.2d 476 (1983)). Judge Goettel noted that the RICO statute envisions a *national* policy to fight organized crime, and concluded that its enforcement should therefore proceed in as uniform a manner as possible. In view of the need for uniformity in administering civil RICO actions and the fact that the plaintiffs' allegations rested on violations of the Commodities Exchange Act ("the CEA"), Judge Goettel found it proper to borrow the two-year statute of limitations governing private actions under the CEA. Although this is not clear from Judge Goettel's opinion, it appears likely that he was suggesting that, where the predicate offenses are federal, courts should choose the appropriate federal statute of limitations rather than the state statute applicable to the most analogous state claim. *But see A.J. Cunning-*

*ham Packing Corp. v. Congress Financial Corp.*, 792 F.2d 330, 337–41 (3d Cir.1986) (Sloviter, J., concurring in the judgment) (arguing that the four-year federal statute of limitations applicable to claims under the Clayton Antitrust Act should be applied to all civil RICO claims), *discussed infra* note 3. Thus, it would appear that, like Judges Lasker and Walker, Judge Goettel has endorsed a case-by-case determination of the appropriate statute of limitations for each civil RICO action.

■ In view of these cases, I am faced with two immediate questions. First, whether to fill the void in the RICO statute by adopting a state statute of limitations or a federal one. And second, regardless of the source of the statute, whether to borrow the same statute for all RICO claims, no matter what their factual underpinnings, or to choose the appropriate statute based on an examination of the factual circumstances presented in each case.

*Durante* at least suggests the answer to the first of these questions. The court of appeals began its discussion of the statute of limitations question with the observation that "[s]ince RICO does not contain its own statute of limitations, and there is no other apparently relevant federal statute of limitations for RICO claims, the [district] court was required to apply the most appropriate limitations period provided by state law." 755 F.2d at 248 (citing *Board of Regents v. Tomanio*, 446 U.S. 478, 485, 100 S.Ct. 1790, 1795–96, 64 L.Ed.2d 440 (1980), and *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 462, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975)). The court was presumably aware of and rejected the option of borrowing from a federal statute. In addition, the great weight of authority is that state law is the appropriate source from which to borrow the limitation period for civil RICO claims. *See A.J. Cunningham*, 792 F.2d at 338 (Sloviter, J., concurring in the judgment); A.B.A. Section of Corporation, Banking and Business Law, *Report of the Ad Hoc Task Force on Civil RICO* 387 (1985) [hereinafter cited as *"A.B.A. Civil RICO Report"*]. To the Court's knowl-

edge, only Judge Goettel, in *Bartels v. Clayton Brokerage Co. of St. Louis, Inc.*, 631 F.Supp. 442 (S.D.N.Y.1986), and Judge Sloviter, concurring in the judgment in *A.J. Cunningham Packing Corp. v. Congress Financial Corp.*, 792 F.2d 330 (3d Cir. 1986),[4] have looked to federal law. *Cf. Creamer v. General Teamsters Local Union 326*, 579 F.Supp. 1284 (D.Del.1984) (considering and rejecting the contention that a statute of limitations under the National Labor Relations Act should apply to a RICO claim involving labor union activities). Finally, even in *DelCostello*, where the Supreme Court chose a federal statute, it stated that "resort to state law remains the norm for borrowing of limitations periods," 462 U.S. at 171, 103 S.Ct. at 2294, and that "absent some sound reason to do otherwise, Congress would likely intend that the courts follow their previous practice of borrowing state provisions," *id.* at 158 n. 12, 103 S.Ct. at 2287 n. 12. I am not persuaded that the nature of civil RICO claims is such that courts should look to federal rather than state law.

▉ Having decided to borrow a state statute of limitations, I turn to the second question set out above—namely, whether to treat all civil RICO claims similarly, without considering the factual circumstances presented in each case, and to apply the same statute of limitations to all RICO claims, or to characterize each RICO claim on the basis of its particular factual underpinnings and to apply that statute which is most analogous in each case. On this question, I agree with Judges Lasker and Walker that *Durante* is not dispositive. As Judge Lasker noted in *Fustock*, the court of appeals did not seem to be announcing a rule for all civil RICO cases. Rather, it would appear to have been concerned simply with the one case before it. On the other hand, I note that it would not be inconsistent with *Durante* to apply the statute that defendants urge the Court to apply, since that is the very statute that the court of appeals selected in *Durante*.

Because *Durante* is not dispositive of the issue before me, I turn to the decisions of the other courts of appeals. At the outset, I note that the law in this area is unsettled. Only two circuit courts appear to have directly addressed the question, and they reached opposite conclusions. The Court of Appeals for the Third Circuit has held that a single statute of limitations should apply to all RICO claims brought in the third circuit. *Malley-Duff & Assocs., Inc. v. Crown Life Ins. Co.*, 792 F.2d 341, 349 (3d Cir.1986) ("[I]n borrowing state limitations periods for civil RICO claims courts must select, in each state, the *one* most appropriate statute of limitations for *all* civil RICO claims.") (emphasis in original). The Court of Appeals for the Sixth Circuit has taken a different view. Without engaging in as detailed an analysis as the Court of Appeals for the Third Circuit, it held that the selection of the appropriate statute of limitations for civil RICO claims must be made on a case-by-case examination of the underlying predicate acts. *Sil-*

---

**4.** Judge Sloviter filed opinions concurring in the judgment of the panel in both *A.J. Cunningham* and its companion case, *Malley-Duff & Assocs., Inc. v. Crown Life Ins. Co.*, 792 F.2d 341 (3d Cir.1986), *discussed infra* pp. 485–488. She characterized civil RICO "as a congressionally provided remedy for repeated criminal behavior that results in economic injury," and noted that the "civil remedy provided in the Clayton [Antitrust] Act has a similar purpose." *A.J. Cunningham*, 792 F.2d at 340. Judge Sloviter went on to note the strong analogy between the two:

> Both section 4 of the Clayton Act and the civil enforcement provision of RICO provide for the recovery of three-fold damages and the cost of suit including a reasonable attorney's fee. Both require the plaintiff to prove an injury "in his business or property by reason of" a violation. Moreover, Congress explicitly used the Clayton Act as the model for the civil provisions of RICO.

*Id.* (citations omitted). Judge Sloviter also found it "more satisfying intellectually to apply [a statute of limitations] to which Congress has given its specific attention, as it did when it amended the Clayton Act to provide a four year statute of limitations, than to apply one to which the state legislatures have given no specific attention and which they swept up instead in a 'catch all.'" *Id.* at 340–41 (citations omitted). Judge Sloviter therefore concluded that all RICO claims should be measured by the four-year statute of limitations applicable to Clayton Act claims. *Id.* at 341.

verberg v. Thomson McKinnon Sec., Inc., 787 F.2d 1079, 1083 (6th Cir.1986) ("[T]he selection of the applicable state limitations period in the individual case should be made on the basis of a characterization of the kind of factual circumstances and legal theories presented.").

Two other courts of appeals would apparently follow the uniform approach. The Court of Appeals for the Eleventh Circuit has hinted in dictum that it too would apply a single state limitations period to all RICO claims. *Hunt v. American Bank & Trust Co.*, 783 F.2d 1011, 1014 n. 4 (11th Cir.1986) ("[T]he key lesson of *Wilson* seems to be that there should be applied 'in each State ... the one most appropriate statute of limitations' for all RICO actions.") (citations omitted) (quoting *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985)). And, although it has not said so explicitly, the Court of Appeals for the Ninth Circuit would appear to have adopted the uniform approach to the selection of a statute of limitations for RICO actions. *See Compton v. Ide*, 732 F.2d 1429, 1433 (9th Cir.1984) ("We ... find that the California period of limitation applicable to state claims most analogous *to RICO civil actions* is the three year period for actions based on statute.").

Although some of the remaining courts of appeals have been called upon to select a state statute of limitations for civil RICO claims, they did not do so in a manner that reveals which approach they were following, if indeed they even considered the question. *See, e.g., Alexander v. Perkin Elmer Corp.*, 729 F.2d 576, 577 (8th Cir. 1984). The district court decisions in these circuits have reached conflicting conclusions, much like the circuit court decisions discussed above, although the more recent district court opinions appear to adopt the uniform approach with greater frequency.[5]

Having studied the question carefully, I find that I am most persuaded by the Third Circuit's well-reasoned and scholarly opinion in *Malley-Duff & Assocs., Inc. v. Crown Life Ins. Co.*, 792 F.2d 341 (3d Cir.1986). That court based its analysis on *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), in which the Supreme Court considered the borrowing process for claims under section 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983 (1982), and concluded that all such claims should be treated the same way for limitations purposes.

The court of appeals began its analysis by noting that *Wilson* established a three-part inquiry to guide the selection of the statute of limitations that will govern a federal claim. First, the court must consider whether state law or federal law governs the characterization of the claim for statute of limitations purposes. Next, the court must decide whether all claims arising under the federal law should be characterized in the same way, or whether they should be evaluated differently depending on the varying factual circumstances and legal theories presented in each individual case. Finally, the court must characterize the essence of the claim in the case before it, and determine which state statute provides the most appropriate limiting principle. 792 F.2d at 345 (citing *Wilson*, 105 S.Ct. at 1943).

The court of appeals then applied this three-step inquiry. First, it considered whether federal or state law governs the characterization of civil RICO claims for statute of limitations purposes. The court recognized that the characterization of RICO claims, like that of § 1983 claims, "is derived from the elements of the cause of action and Congress' purpose in providing it," and that "[t]hese, of course, are matters of federal law." *Wilson*, 105 S.Ct. at 1943. This being true, the confluence of

---

5. *See, e.g., Louisiana Power & Light Co. v. United Gas Pipe Line Co.*, 642 F.Supp. 781 (E.D.La. 1986); *Fink v. Meserve, Mumper & Hughes,* No. 84 Civ. 10382 (PHM) (N.D.Ill. June 19, 1986) [Available on WESTLAW, DCTU database]; *HMK Corp. v. John Walsey,* 637 F.Supp. 710

(E.D.Va.1986); *Ambrosino v. Rodman & Renshaw, Inc.,* 635 F.Supp. 968, 973–74 (N.D.Ill. 1986); *Davis v. A.G. Edwards & Sons, Inc.,* 635 F.Supp. 707, 711 (W.D.La.1986); *Davis v. Smith,* 635 F.Supp. 459, 462 (N.D.Ill.1985).

the supremacy clause, U.S. Const. art. VI, cl. 2, and the Rules of Decision Act, ch. 646, 62 Stat. 944 (codified at 28 U.S.C. § 1652 (1982)), directs that the matter of characterization should be treated as a federal question. 792 F.2d at 346 ("'If ... federal law is both pertinent and valid, it applies because the supremacy clause of the Constitution so commands; if the federal law is impertinent or invalid, state law applies because Congress has so directed.'") (quoting Westen & Lehman, *Is There Life for* Erie *After the Death of Diversity?*, 78 Mich.L.Rev. 311, 316 (1980)). The court added that the "federal interest in uniformity and in having 'firmly defined, easily applied rules,'" which the Supreme Court emphasized in *Wilson*, applies with as much force to RICO as to other federal statutes, such as § 1983, § 301 of the Labor Management Relations Act, and the federal antitrust laws. 792 F.2d at 346.

After concluding that federal law controls the characterization of civil RICO claims for limitations purposes, the court turned to the second step in the *Wilson* inquiry—whether all claims arising under a particular federal law should be characterized in the same way, or whether they should be evaluated differently depending upon the varying factual circumstances and legal theories presented in each individual case. The court noted that in *Wilson*, the Supreme Court rejected the practice of parsing the particular allegations supporting an individual § 1983 claim, and instead looked to the federally-created cause of action for a broader analogy that could encompass all § 1983 claims brought in a given state.

The court of appeals outlined the considerations that led the Supreme Court in *Wilson* to select one limitation period for all § 1983 claims, and concluded that much of the Court's reasoning supported the same approach in the context of civil RICO claims. For example, the court of appeals observed that civil RICO is as far removed from any traditional state cause of action as is § 1983. It quoted those portions of the Second Circuit's opinion in *Durante* which made it clear that the RICO claim in

that case differed significantly from a simple state law usury claim. The court opined that a similar analysis would apply to any RICO claim, since "concepts such as RICO 'enterprise' and 'pattern of racketeering activity' were simply unknown to common law, and all federal crimes contain jurisdictional and other elements irrelevant to any state civil action." 792 F.2d at 348. Thus, "as with § 1983, any analogies to traditional state causes of action 'are bound to be imperfect.'" 792 F.2d at 348 (quoting *Wilson*, 105 S.Ct. at 1945).

The court of appeals also noted that RICO presents the same danger identified in *Wilson* that two or more limitations periods could apply to one claim. Given the sheer number and variety of predicate acts that may constitute the pattern of racketeering activity in a given case, the particularized approach to borrowing statutes of limitations would "'inevitably breed[ ] uncertainty and time-consuming litigation.'" 792 F.2d at 348 & n. 14 (quoting *Wilson*, 105 S.Ct. at 1945). The court observed:

> Even RICO claims based on "garden variety" business disputes might be analogized to breach of contract, fraud, conversion, tortious interference with business relations, misappropriation of trade secrets, unfair competition, usury, disparagement, etc., with a multiplicity of applicable limitations periods. A state may even have different limitations periods for common law fraud and securities fraud. More extreme cases might include allegations sounding in assault, battery, false imprisonment, infliction of emotional distress, abuse of process, or trespass to land or chattels.

792 F.2d at 348 (citations omitted). The fact that RICO requires at least two predicate acts in all cases makes it even more likely that more than one analogy will have force in a given case. Unless the two alleged predicate acts are closely related, it is unlikely that both acts would be subject to the same statute of limitations. 792 F.2d at 348 & n. 14. The court of appeals therefore concluded "that in borrowing state limitations periods for civil RICO

claims courts must select, in each state, the *one* most appropriate statute of limitations for *all* civil RICO claims. 792 F.2d at 349 (emphasis in original).

The court then turned to the final stage in the three-step inquiry—the selection of the one state statute to govern all civil RICO actions arising in Pennsylvania, the state in which *Malley-Duff* arose. The court quickly rejected the Clayton Act's four-year statute of limitations for private treble damage antitrust suits:

> [Al]though RICO and the Clayton Act both require injury to business or property for standing to sue, there is little overlap between the types of *conduct* that are prohibited; and [,] despite the fact that Congress consciously drew upon the antitrust model in drafting RICO, it did not include a comparable statute of limitations period, perhaps indicating a congressional intent that there not be a national standard.

792 F.2d at 350 n. 17. The court proceeded to choose among four Pennsylvania statutes of limitation: (1) the statute governing common law fraud actions, (2) the statute governing civil penalty or forfeiture actions, (3) a "potpourri" two-year statute of limitations, and (4) the "catchall" six-year residual statute of limitations. The court considered each in turn. The court observed that " 'the common law fraud analogy falls far short of capturing the multitude of factual bases on which RICO can be based,' " 792 F.2d at 351 (quoting *Electronic Relays (India) Pvt. Ltd. v. Pascente,* 610 F.Supp. 648, 651 (N.D.Ill.1985)), and concluded that "characterizing RICO as essentially a fraud action would be to have the tail wag the dog," *id.* The court also rejected the analogy to actions for civil penalty or forfeiture, noting that civil RICO is not a forfeiture statute, since a successful private plaintiff's recovery is based upon the injury sustained rather than on what the defendant gained through illegal conduct. Nor did the court think that the treble damage provision was intended primarily as a penalty. In addition, the court was concerned that the one-year Pennsylvania limitation period applicable to

civil penalty or forfeiture actions was so short that it might contravene the broad remedial purposes of civil RICO. The court also rejected 42 Pa.Cons.Stat.Ann. § 5524 (Purdon Supp.1986), which it described as "a two-year statute of limitations, covering a potpourri of civil actions." The court found that this choice suffered from the "fundamental" failing that it does not "characterize the federal cause of actions" as *Wilson* commands, but instead "seeks to take advantage of the fortuitous circumstance that a number of potential state law analogies share a common limitations period." As the court observed, "[s]uch an approach will provide little guidance for the resolution of this problem in other states, and may prove particularly vulnerable to changes in the state statute of limitations scheme." 792 F.2d at 352.

Finally, the court of appeals turned to Pennsylvania's "residual 'catchall' statute of limitations for actions, primarily based on statute, that are not governed by any more specific period of limitations." The court recognized that the Supreme Court had considered and rejected the application of such a catchall statute to § 1983 claims in *Wilson.* Nonetheless, it found that the Supreme Court's reasons for rejecting this particular analogy in the § 1983 context did not apply to RICO:

> RICO was enacted in 1970, long after statutory causes of action and corresponding catchall limitations periods became commonplace. Thus, it would not be disingenuous (or anachronistic) to suggest that Congress might have approved of borrowing such statutes. Second, RICO is a strictly statutory remedy to enforce statutory rights.

792 F.2d at 352. In further support of its choice, the court of appeals noted:

> Such an approach ... recognizes that civil RICO is truly *sui generis* and that particular claims cannot be readily analogized to causes of action known at common law—the very observation that led us to search for a uniform limitations period in the first place. And, like personal injury statutes, the catchall stat-

utes are particularly unlikely to be fixed in manner that would discriminate against federal claims.

792 F.2d at 353. The court observed that the American Bar Association's Ad Hoc Task Force on Civil RICO had specifically approved of cases characterizing RICO in this way. 792 F.2d at 352–53 (quoting *A.B.A. Civil RICO Report, supra* p. 29, at 389–91). Interestingly, the court of appeals cited *Durante* as one of the cases applying a catchall statute to a RICO claim. 792 F.2d at 353. Accordingly, the court of appeals concluded that all civil RICO actions arising in Pennsylvania would be governed by Pennsylvania's six-year residual statute of limitations, 42 Pa.Cons.Stat.Ann. § 5527 (Purdon Supp.1986).

I agree with the Third Circuit's general analysis in *Malley-Duff*, and conclude that I should select "the one most appropriate statute of limitations for all civil RICO claims." *Accord Teltronics Servs., Inc. v. Anaconda-Ericsson, Inc.*, 587 F.Supp. 724, 733 (E.D.N.Y.1984) (finding § 214(2) uniformly applicable to all RICO claims in New York), *aff'd on other grounds*, 762 F.2d 185 (2d Cir.1985). Of course, I must still engage in the third stage of the *Wilson* inquiry to determine which *New York* statute is the most appropriate. There are three apparent candidates, including those suggested by the parties: (1) the six-year statute governing actions based upon fraud, N.Y.Civ.Prac.Law § 213(8) (McKinney Supp.1986); (2) the six-year "omnibus" statute governing actions "for which no limitation period is specifically prescribed by law," *id.* § 213(1); and (3) the three-year statute governing actions "to recover upon a liability, penalty or forfeiture created or imposed by statute," *id.* § 214(2). I consider each in turn.

■■■ I reject § 213(8), governing actions based upon fraud, for essentially the same reasons that the Third Circuit rejected the corresponding Pennsylvania statute. Although many civil RICO actions have alleged wire, mail, or securities fraud as predicate acts,[6] the statute defines "racketeering activity" to include nine state law felonies and violations of over 25 federal statutes, including those prohibiting bribery, counterfeiting, embezzlement of pension funds, gambling offenses, obstruction of justice, interstate transportation of stolen property, and labor crimes. " 'The common law fraud analogy falls far short of capturing the multitude of factual bases on which RICO can be based,' " *Malley-Duff*, 792 F.2d at 351 (quoting *Electronic Relays*, 610 F.Supp. at 651), and to characterize RICO "as essentially a fraud action would be to have the tail wag the dog," *id.* I also find inapplicable § 213(1), the "omnibus" statute governing actions "for which no limitation period is specifically prescribed by law." Our court of appeals has observed that § 213(1) "has generally been understood to govern only actions for equitable relief." *Pauk v. Board of Trustees*, 654 F.2d 856, 863 (2d Cir.1981), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982) (citing *Singleton v. City of N.Y.*, 632 F.2d 185, 190 (2d Cir.1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981)).

■■■ On the other hand, I find that § 214(2) provides a compelling analogy to civil RICO claims. Section 214(2) encompasses actions based upon a "liability ... created or imposed by statute." As New York's highest court has explained, § 214(2) is "applicable to actions for wrongs not recognized in the common or decisional law." *State v. Cortelle Corp.*, 38 N.Y.2d 83, 86, 341 N.E.2d 223, 224, 378 N.Y.S.2d 654, 656 (1975). Section 214(2) was applied to § 1983 claims in this circuit before the Supreme Court decided in *Wil-*

---

**6.** This trend has been the subject of increasing disquietude over the federalization of state common law. *See Sedima*, 105 S.Ct. at 3293 (Marshall, J., dissenting); 131 Cong.Rec. S10285–88 (1985) (remarks of Sen. Hatch). Many current proposals to curtail civil RICO are directed to precisely this point. For ex-

ample, Senate Bill 1521, 99th Cong., 1st Sess. (1985), would require at least one predicate act other than mail, wire, or securities fraud to make out a civil RICO claim. *Malley-Duff*, 792 F.2d at 351. *See also* Boucher, *Bill Curbing RICO's Use Advances*, Nat'l L.J., Sept. 1, 1986, at 15, col 1.

*son* that § 1983 claims must be analogized to personal injury actions, *see Pauk v. Board of Trustees*, 654 F.2d 856, 866 (2d Cir.1981), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982), and its predecessor was applied to private treble damage antitrust actions before the Clayton Act was amended to include a four-year statute of limitations, *see, e.g., Moviecolor Ltd. v. Eastman Kodak Co.*, 288 F.2d 80, 82 (2d Cir.) (Friendly, J.), *cert. denied*, 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26 (1961). Moreover, § 214(2) is the statute that our court of appeals chose to apply to the civil RICO claim in *Durante*. It would therefore seem particularly appropriate to analogize civil RICO actions to actions based upon a statutory liability, and to measure their timeliness with § 214(2).[7]

*Accrual of Civil RICO Claims*

 Having concluded that civil RICO claims arising in New York are governed by a three-year statute of limitations, I must now determine the point at which such a claim accrues. Although state law specifies the duration of the limitations period, and the circumstances under which the period is tolled, *see, e.g., Wilson*, 105 S.Ct. at 1943 & n. 17, federal law determines the date on which the period begins to run. *Bowling v. Founders Title Co.*, 773 F.2d 1175, 1178 (11th Cir.1985), *cert. denied*, ── U.S. ──, 106 S.Ct. 1516, 89 L.Ed.2d 915 (1986) (citing *Rawlings v. Ray*, 312 U.S. 96, 98, 61 S.Ct. 473, 474, 85 L.Ed. 605 (1941)); *Compton v. Ide*, 732 F.2d 1429, 1433 (9th Cir.1984); *Singleton v. City of N.Y.*, 632 F.2d 185, 191 (2d Cir.1980),

*cert. denied*, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981). Under the general federal rule, the statute of limitations begins to run when a plaintiff knows or has reason to know of the injury that is the basis for his action. *Bowling*, 773 F.2d at 1178; *Compton*, 732 F.2d at 1433; *Singleton*, 632 F.2d at 191.

Although the general rule is adequate for most federal causes of action, it presents two problems when applied to a civil RICO claim. First, a plaintiff may be injured before he has the right to sue under RICO. To bring a civil RICO claim, a private plaintiff must be injured "by reason of a violation of" one or more of the criminal provisions of RICO. 18 U.S.C. § 1964(c) (1982). Most such violations entail the commission of a "pattern of racketeering activity," *id.* § 1962, which, as defined by the statute, "requires at least two acts of racketeering activity," *id.* § 1961(5). There is no longer any doubt that the injury contemplated by § 1964(c) is nothing more than an injury from an act of racketeering activity. *Sedima*, 105 S.Ct. at 3285–86. Thus, if the first act of racketeering activity injures the plaintiff, the general federal accrual rule would start the statute of limitations running before the commission of the second predicate act. Yet, until the defendant commits the second act of racketeering activity, there can be no "pattern," there has been no violation of § 1962, and the plaintiff has no right to bring a civil RICO action.

Second, unlike most federal claims, which involve a single injury, a civil RICO claim

---

7. My decision to apply § 214(2) may, at first blush, seem inconsistent with *Malley-Duff*, in which the Third Circuit rejected a somewhat similar Pennsylvania statute of limitations. However, the Pennsylvania statute dealt only with statutory actions "for civil *penalty or forfeiture*," and the court of appeals found it inapplicable because it concluded that RICO was neither a forfeiture statute nor primarily a penalty statute. Unlike the Pennsylvania statute, § 214(2) explicitly encompasses actions based "upon a liability ... created or imposed by statute." In addition, the court of appeals was concerned that the Pennsylvania statute, which provides a one-year limitations period, might be

so short that it would contravene the broad remedial purposes of civil RICO. Section 214(2), on the other hand, provides a three-year limitations period, and would seem to strike an appropriate balance between the broad remedial purposes of RICO and the policies of repose. *Cf. Electronic Relays*, 610 F.Supp. at 653. ("Two years is certainly long enough to realize one has been injured by a RICO violation and and to bring suit. And the normal rules on accrual and tolling should ensure that no diligent RICO plaintiff will find his claim time-barred.") The Third Circuit's concerns are therefore not relevant here.

will often involve multiple injuries.[8] By its very language, the RICO statute contemplates the commission of multiple acts by the defendant. Where the plaintiff is the victim of more than one of these acts, he may well suffer multiple injuries.

In the case of most federal causes of action, when a plaintiff suffers two injuries as a result of a defendant's conduct, each injury gives rise to a separate claim; the applicable limitation period runs separately on each claim from the time that the plaintiff knew or had reason to know of the corresponding injury. *See, e.g., Singleton,* 632 F.2d at 190–93 & n. 5 (§ 1983).

Courts have recognized an exception to this rule for certain practices which by their very nature involve an element of continuity. Under this exception, an action is timely as long as the last act evidencing the continuing practice falls within the limitation period, and courts will grant relief with respect to earlier related acts that would otherwise be time-barred. The "continuing violation" doctrine in employment discrimination cases provides a good example of this exception. *See, e.g., Held v. Gulf Oil Co.,* 684 F.2d 427, 430 (6th Cir. 1982) (suit timely where pattern of discriminatory acts continues into the limitation period, even though discriminatory acts commenced prior to limitation period); *Smith v. American President Lines, Ltd.,* 571 F.2d 102, 105–06 (2d Cir.1978); *Acha v. Beame,* 570 F.2d 57, 65 (2d Cir.1978); *see generally* B. Schlei & P. Grossman, *Employment Discrimination Law* 1042–54 (2d ed. 1983).

RICO would seem an appropriate context in which to invoke this exception. By its terms RICO requires some degree of continuity. As noted above, a plaintiff cannot sue until the defendant has committed at least two predicate acts, and therefore in all likelihood caused two injuries. The Supreme Court suggested in *Sedima* that a RICO pattern requires not only two predicate acts, but also the "factor of *continuity plus relationship.*" *Sedima,* 105 S.Ct. at 3285 n. 14 (emphasis in original). Indeed, RICO's criminal provisions have been construed to create a continuing offense:[9]

> The Act provides an example of a continuing offense for purposes of computing the time at which the statute of limitations begins to run. The "nature of the crime ... is such that Congress must assuredly have intended that it be treated as a continuing one." The language of the Act, which makes a pattern of conduct the essence of the crime, "clearly contemplates a prolonged course of conduct."

*United States v. Field,* 432 F.Supp. 55, 59 (S.D.N.Y.1977), *aff'd mem.,* 578 F.2d 1371 (2d Cir.), *cert. denied,* 439 U.S. 801, 99 S.Ct. 43, 58 L.Ed.2d 94 (1978) (quoting *Toussie v. United States,* 397 U.S. 112, 115, 120, 90 S.Ct. 858, 860, 863, 25 L.Ed.2d 156 (1970)) (citations omitted). I therefore conclude that the statute of limitations governing a civil RICO claim begins to run when the plaintiff knows or has reason to know of the injury from the last predicate act on which he relies.[10]

---

**8.** Of course, the general federal rule may suffice for the garden variety RICO claim that arises out of a single fraudulent scheme involving, for example, a violation of the federal securities laws and multiple acts of mail and/or wire fraud, because in such a case the plaintiff usually suffers only a single injury. At least two courts of appeals have applied the general federal rule to civil RICO claims. *Bowling v. Founders Title Co.,* 773 F.2d 1175, 1178 (11th Cir. 1985); *Compton v. Ide,* 732 F.2d 1429, 1433 (9th Cir.1984). The Eighth Circuit has also applied this standard to a civil RICO action. *Alexander v. Perkin Elmer Corp.,* 729 F.2d 576, 577 (8th Cir.1984). The court appears, however, to have

been applying state law, which coincidentally specifies an identical accrual rule.

**9.** The timeliness of a prosecution for a violation of the criminal provisions of RICO is measured by the five-year federal statute of limitations for non-capital offenses, 18 U.S.C. § 3282 (1982). Such a prosecution is timely if at least one act of racketeering is alleged to have occurred in the preceding five years. *United States v. Persico,* 621 F.Supp. 842, 872–73 (S.D.N.Y.1985).

**10.** Of course, if the defendant can show at trial that the predicate acts alleged constituted more than one pattern, he will not be liable for the

## The Timeliness of Bankers' RICO Claim

Turning now to the facts of this case, I must determine whether Bankers' RICO claim is timely under the above standards. Bankers maintains that its RICO claim is timely even when measured by a three-year statute of limitations. Bankers reasons that the timeliness of its claims must be measured from the last predicate act, which it claims is the 1982 bankruptcy fraud.

Not surprisingly, Soifer contends that Bankers' claim against him is time-barred under a three-year statute of limitations. He maintains that the last predicate act with which he is charged is the concealment of the Brookfield asset in connection with the initial bankruptcy fraud. He asserts that this act was committed no later than March 1976, and that Bankers learned of the resulting injury no later than September 1976, when it commenced a proceeding in the bankruptcy court to set aside the confirmation of BAC's plan.

I agree that Bankers' claim against Soifer is time-barred to the extent that it is based upon his having violated the substantive proscriptions of RICO; however, I conclude that Bankers' claim is timely to the extent that it is based upon Soifer's having conspired to violate RICO. Although, as Bankers points out, the 1982 bankruptcy fraud is the most recent predicate act alleged, as noted above, the complaint contains no allegation that Soifer played any role in that transaction. Nor is Soifer alleged to have played any part in the frivolous lawsuits or the bribery of Judge Ballenger.

Thus, the 1976 bankruptcy frauds are the most recent predicate acts in which Soifer is alleged to have participated. The commission of predicate acts by other participants in the enterprise cannot save Bankers' claims against Soifer for *substantive* violations of RICO. Only Soifer's own acts can have that effect. I therefore conclude that as to Bankers' claim that Soifer violated the substantive provisions of RICO, the three-year statute of limitations began to run in September 1976, when Bankers discovered the first bankruptcy fraud and commenced a proceeding to set aside the confirmation of BAC's plan.[11] Since this action was commenced some six years later, those allegations are barred by the statute of limitations and must be dismissed as against Soifer. Bankers may replead its substantive RICO claim within thirty days if it can allege with greater specificity Soifer's role in the post–1976 predicate acts.

Although the fact that Soifer's co-defendants committed predicate acts within the limitations period does not render Bankers' substantive RICO claims timely as to Soifer, the same is not true with respect to Bankers' claim that Soifer conspired to violate RICO. In the case of a continuing civil conspiracy, each time a member of the conspiracy commits an overt act in furtherance of the conspiracy, a cause of action accrues to the plaintiff to recover the damages caused by that act, and as to those damages the statute of limitations runs from the commission of the act. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338–39, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971) (continuing antitrust conspiracy). Because Bankers

---

injuries from the predicate acts comprising those patterns that did not continue into the limitations period.

**11.** Bankers' reliance on 18 U.S.C. § 3284 (1982) does not save its civil RICO claim against Soifer. Section 3284 makes fraudulent concealment a continuing crime that is not deemed complete, and for which the limitations period does not begin to run, until the debtor either receives a final discharge or is denied a discharge. Section 3284 is a criminal tolling provision, and is inapplicable to civil claims. It acts only to toll

the five-year criminal statute measuring the timeliness of a prosecution for the underlying predicate act. Thus, theoretically, Soifer can still be prosecuted for his part in the initial bankruptcy fraud.

However, § 3284 has no effect on the running of the statute of limitations for a civil RICO claim alleging fraudulent concealment as a predicate act. Just as the fact that a predicate act is time-barred does not bar a civil RICO claim, so too the fact that a predicate act is not time-barred does not render a civil RICO claim timely.

has alleged that Soifer conspired with Braten and Rhoades to violate RICO, and that Braten and Rhoades committed predicate acts within the limitations period, Bankers' conspiracy claim is timely even as to Soifer. Of course, at trial Soifer may still attempt to prove that he withdrew from the conspiracy prior to the commission of the 1982 bankruptcy fraud, or that his co-conspirators' actions were either not in furtherance of or not a natural and probable consequence of the conspiracy. Accordingly, Soifer's motion for judgment on the pleadings is denied as to Bankers' claim that Soifer conspired to violate RICO.

 The remaining defendants, other than Feldesman and Brookfield Clothes, *see supra* note 1, have also moved for judgment on the pleadings on statute of limitations grounds. There is no question that Bankers' claims against the remaining defendants were asserted timely, since each of these defendants is alleged to have played a part in the 1982 bankruptcy fraud, well within the three-year limitations period. Accordingly, their motions are denied.

*Conclusion*

For the foregoing reasons, I conclude that Bankers does not lack standing to assert its RICO claim. I also conclude that Bankers has adequately alleged the commission of a pattern of racketeering activity on the part of Soifer, Braten, and Rhoades, but not on the part of the various corporate defendants. Finally, I conclude that Bankers' claim that Soifer violated the substantive provisions of RICO is barred by the applicable statute of limitations, while its claim that Soifer conspired to violate RICO was brought timely. Bankers claim against Braten and Rhoades was also brought timely.

Accordingly, Braten and Rhoades' motion for judgment on the pleadings is denied in all respects. The corporate defendants' motion is granted and the complaint is dismissed as to Brookfield Industries, Inc., Bennington Court Ltd., Braxton Ltd., Aura by Laurie, Ltd., Erwin Commercial Corp., Michael B. Marks, Inc., Timely Tex-

tiles, Inc., and Todd Equipment Leasing Co., Inc. Bankers may replead within thirty days if it can allege with more specificity that any of the corporate defendants actively engaged in two or more predicate acts of racketeering activity. If Bankers chooses to replead, it should separately number and state its allegations as to each corporate defendant, rather than lumping them together and referring to them collectively as "the defendants." Soifer's motion is granted with respect to Bankers' claim that he violated the substantive provisions of RICO and denied in all other respects.

SO ORDERED.