Umphrey H. BOWLING, Jr., Harold Williams, Plaintiffs-Appellees,

v.

FOUNDERS TITLE COMPANY, a corporation, Defendant-Appellant.

Bernard ZOLDESSY, Plaintiff-Appellee,

v.

FOUNDERS TITLE COMPANY, Defendant-Appellant.

Umphrey H. BOWLING, Jr.; Harold Williams, Plaintiffs-Appellees,

v.

J.R. BUDERUS; Buderus Family Trust, Defendants,

Founders Title Company, Defendant-Appellant.

Bernard ZOLDESSY, Plaintiff-Appellee,

v.

J.R. BUDERUS, The J.R. Buderus Family Trust, Defendants,

Founders Title Company, Defendant-Appellant.

Nos. 84–7311, 84–7312, 84–7470 and 84–7471.

United States Court of Appeals, Eleventh Circuit.

Oct. 15, 1985.

Robert A. Huffaker, Rushton, Stakely, Johnston & Garrett, Montgomery, Ala., for defendant-appellant.

H.A. Lloyd, Lloyd, Dinning, Boggs & Dinning, Demopolis, Ala., Frank W. Riggs, Wayne P. Turner, Montgomery, Ala., for plaintiffs-appellees.

Before VANCE and JOHNSON, Circuit Judges, and MORGAN, Senior Circuit Judge.

JOHNSON, Circuit Judge:

This is a consolidated action in which the plaintiffs, real estate brokers Umphrey Bowling and Harold Williams and landowner Bernard Zoldessy, sued the Founders Title Company of California seeking damages for fraud, breach of contract and civil RICO violations in certain land transactions. At trial, the jury found Founders liable to all three plaintiffs on the civil RICO counts, and to Bowling for common law fraud. We AFFIRM Bowling's civil RICO and fraud awards and VACATE Williams' and Zoldessy's civil RICO judgments. We REMAND the award of attorney's fees to the district court for modification in conformance with this opinion.

I. Facts.

J.R. Buderus, a resident of California, conceived of an elaborate plan through which he hoped to profit from the sale of large amounts of farm land in the Southeast United States. In order to begin the acquisition, he contacted several real estate brokers working in Alabama and Florida, including plaintiffs Umphrey Bowling and Harold Williams. One of the tracts that they recommended to Buderus belonged to plaintiff Bernard Zoldessy. Buderus visited Alabama on several occasions to inspect the land.

The sales agreements that the parties entered into were unusual because they

required Buderus to make no actual payment of funds prior to closing. Instead, Buderus used an instrument known as an "Earnest Money Time Deposit" as security. The instrument was in essence a promise to pay money from a specified source at a later date. Buderus represented that the instrument was commonly used in California and was backed by a certificate of deposit. The "funds" provided by Buderus, time drafts amounting to more than $770,000, were to be used as liquidated damages in the event of a breach of the sales contract.

Buderus placed the contracts and the time draft instruments in escrow with Founders Title Company of California. All three plaintiffs called Founders Title between August and October of 1981 to check on Buderus' reliability. A branch manager of Founders, John Nohrden, told each of the plaintiffs that he had known Buderus for about 15 years and that he was an honorable and wealthy man. Evidence at trial also suggested that Nohrden told the callers that time drafts were valid devices in California, and that Buderus' drafts were backed by adequate funds. Founders also mailed receipts to the plaintiffs when Buderus placed additional time draft instruments in the escrow account.

The sales fell through after Buderus came to the conclusion that he would not be exempt from the reporting requirements of the Interstate Land Sales Disclosure Act. Buderus wrote to all the brokers and sellers on November 30, 1981, to inform them that he was terminating the sales agreement. At the same time, however, he made telephone calls to each of the plaintiffs assuring them that the letters only applied to other deals and that he would perform his sales agreement with them. In December 1981, Bowling wrote Zoldessy that the sale was "dead" and urged him to sue Buderus. Zoldessy wrote to Founders demanding that the time drafts remain in the escrow account. On January 19, 1982, Founders informed Williams that there was no money to back up the time drafts in the escrow account. Williams knew with certainty at that point that he had been deceived.

The damage to Williams and Bowling caused by the collapse of the sales agreement was the loss of more than $300,000 in brokers' fees they would have received. Zoldessy lost more than $1,000,000 because of a decline in land prices between the time that Buderus agreed to buy the land and the time that it was sold to another buyer. If the time drafts in the escrow account had had any value, the plaintiffs could have divided the $775,000 in liquidated damages among themselves.

The plaintiffs in this case brought suit against Buderus and Founders Title Company, alleging breach of contract, fraud, civil RICO violations, and conspiracy to violate RICO. After the court granted partial summary judgment to the plaintiffs, striking Founders' defense based on the California statute of frauds because Alabama law rather than California law governed the case, the case proceeded to trial. At the close of trial, the defendants moved for directed verdict and the court denied the motion except for Williams' common law fraud claim, which was barred by the statute of limitations. The court submitted special verdict forms to the jury and the jury returned verdicts in favor of all three plaintiffs.

II. Discussion.

On appeal, Founders Title Company raises four objections to the decision of the court below. Appellants argue (1) that the civil RICO claims of Williams and Zoldessy are barred by the statute of limitations; (2) that the three plaintiffs cannot recover under RICO because they do not show "racketeering injury" or criminal conviction for the predicate acts; (3) that the common law fraud judgment in favor of Bowling should be set aside on jurisdictional and choice of law grounds; and (4) that the attorney's fee awards should be reversed. We examine each argument in turn.

A. RICO claims.

At trial, the jury found that appellants violated the Racketeer Influenced and Cor-

rupt Organizations Act, 18 U.S.C.A. § 1961 *et seq.* ("RICO"), by committing the predicate acts of wire fraud (misrepresenting the reliability of Buderus by phone) and mail fraud (mailing misleading receipts to plaintiffs), and by conducting a racketeering enterprise (the title company business). Under the provisions of Section 1964(c) the jury awarded damages of $25,000 (trebled to $75,000) to each plaintiff.

1. Statute of limitations.

■ When it passed RICO, Congress chose not to specify a period of limitation. Under such circumstances, federal courts must apply the most closely analogous state statute of limitations. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975). The parties agree with the district court that the appropriate period here is one year, following Alabama's fraud statute. However, although state law specifies the duration of the limitations period, federal law determines the date on which that period begins. *Rawlings v. Ray*, 312 U.S. 96, 61 S.Ct. 473, 85 L.Ed. 605 (1941). Here, the district court instructed the jury that the statute began to run after the commission of the last predicate act (mail fraud or wire fraud)—and thus, the jury found that none of the claims of the three plaintiffs was barred. Founders argues, on the contrary, that a RICO claim accrues when a plaintiff either knows or should know that he or she has sustained an injury.

■ We agree with Founders. We thus follow the Eighth and Ninth Circuits, *Alexander v. Perkin Elmer Corp.*, 729 F.2d 576 (8th Cir.1984), and *Compton v. Ide*, 732 F.2d 1429 (9th Cir.1984), in holding that the general federal rule, which provides that the statute of limitations begins to run when a plaintiff knows or should know of the injury, applies in civil RICO cases. This is consistent with our practice in related fraud and securities cases. *See Hadra v. Herman Blum Consulting Engineers*, 632 F.2d 1242 (5th Cir.1980); and *Vigman*

*v. Community Nat'l Bank & Trust Co.*, 635 F.2d 455 (5th Cir.1981).

■ In this case, Bowling was aware that the transaction had fallen through by December 1981; he filed his complaint in September of 1982, less than one year later and within the statute of limitations. Thus, Bowling's claim is not barred. However, Williams and Zoldessy learned that they had been deceived by mid-January 1982, yet neither filed suit until late March 1983. The RICO claims of Williams and Zoldessy are thus time-barred. The judgments in their favor on these claims are vacated.

2. Racketeering injury.

■ Appellants argue that Bowling cannot recover civil RICO damages because he has not proved so-called "racketeering injury"—that is, injury from the pattern of racketeering proscribed by RICO, as distinct from that inflicted by the predicate offenses. This requirement, borrowed from the Second Circuit, *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 741 F.2d 482 (2d Cir. 1984), is difficult to define and—in part for that reason—has caused considerable dispute among the circuits. The concept derives from the reluctance of some courts to extend RICO to ordinary fraud and breach of contract cases (as opposed to the racketeering activity of organized crime, toward which it was arguably directed).

The Supreme Court granted *certiorari* in *Sedima* to resolve the conflict. In *Sedima, S.P.R.L. v. Imrex Co., Inc.*, — U.S. —, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the Court reversed the Second Circuit, holding that a plaintiff is not compelled to show "racketeering injury" to make out a civil RICO claim. We are thus satisfied that the district court's analysis was correct and that appellee Bowling's RICO judgment survives this hurdle.

3. Criminal conviction for predicate acts.

■ Appellants again rely on the Second Circuit's *Sedima* decision to argue that in making out his civil RICO claim Bowling

was required—and failed—to prove that Founders was criminally convicted for the predicate acts. In reversing the latter decision, the Supreme Court examined this argument and squarely rejected it: "We can find no support in the statute's history, its language, or considerations of policy for a requirement that a private treble damages action under § 1964(c) can proceed only against a defendant who has already been criminally convicted. To the contrary, every indication is that no such requirement exists." *Id.*

Thus, in sum, Bowling's RICO judgment stands.

### B. Fraud claims.

At trial, the jury held Founders liable to Bowling for common law fraud. Founders challenges this judgment on two grounds.

#### 1. Personal jurisdiction.

Founders argues that the fraud judgment is invalid because the company lacked the minimum contacts necessary to establish personal jurisdiction in the Middle District of Alabama. Founders' contacts with Alabama consisted of several phone calls and the mailing of receipts to the plaintiffs, and the knowledge that Buderus was buying land in the state.

In assessing whether personal jurisdiction is proper, this Court asks whether the defendant "has purposefully availed himself of the benefits and protection of, the forum state's laws, whether the forum state has any special interest in exercising jurisdiction, and whether the convenience of the parties favors litigating in another state." *Austin v. North American Forest Products,* 656 F.2d 1076, 1089 (5th Cir. 1981). To determine whether there has been purposeful availment of a state's laws, the court further inquires whether the defendant had a "deliberate" or merely a "fortuitous" contact with the state.

We find that Founders' contacts in the present case, although admittedly few, were deliberate and knowing. Founders agreed to act as escrow agent for Buderus, whom it knew was purchasing large quantities of land in Alabama—thus, appellant was well aware of the *situs* of the scheme. Although the phone calls were initiated by the plaintiffs, Founders knowingly gave them information (via Nohrden, a company officer) to induce them to sell the land. Founders also mailed receipts to the plaintiffs in Alabama. These contacts were directly connected to the cause of action in this case. Further, Founders is by no means unsophisticated or parochial: it is an established commercial entity that regularly conducts interstate business. Thus, there is no unfair surprise in the maintenance of this suit in Alabama. In short, Founders was well acquainted with the players and the plot, the Alabama setting, and the importance of its own well-rehearsed, albeit supporting, role in this scheme. The district court's exercise of personal jurisdiction here does not offend due process.

#### 2. Choice of law.

Founders argues that, under Alabama choice of law rules, Bowling's pendent common law fraud claim should be governed by California rather than by Alabama substantive law. This would be to Founders' advantage, since this claim would be barred under California law by the statute of frauds.

However, the district court was correct to apply Alabama substantive law. Alabama choice of law principles in tort and fraud look primarily to the law of the state where the injury occurs—in this case, Alabama. *Pound v. Gaulding,* 237 Ala. 387, 187 So. 468 (1939). Further, in cases involving land transfers, the law of the state in which the land is located governs. *Griese-Traylor Corp. v. First Nat'l Bank,* 572 F.2d 1039 (5th Cir.1978).

Thus, Bowling's fraud judgment stands.

### C. Attorney's fees.

The district court awarded attorney's fees in the amount of $25,000 each to Bowling and Williams and $28,100.28 to Zoldessy on the civil RICO claims. These awards

are REMANDED to the district court for modification in conformance with this opinion.

AFFIRMED in part, VACATED in part & REMANDED.