906 F.2d 1546
 59 USLW 2114, RICO Bus.Disp.Guide 7525
 BIVENS GARDENS OFFICE BUILDING, INC., a Florida corporation,
James A. Karns, individually and as a minority shareholder
of Bivens Center, Inc., Fred Konstand, individually and as a
former majority shareholder of Bivens Center, Inc., George
Malik, partner of Edward Malik, partner of Joseph P. Malik,
partner of Malik Investment Company, and George Malik,
individually, Plaintiffs-Appellants,
v.
BARNETT BANK OF FLORIDA, INC., a Florida Corporation, which
acquired American Bancshares, Inc., a Florida corporation,
Bivens Center, Inc., a Florida corporation, Robert P. Cates,
a partner of Goldin, Turner and Cates, a partnership, Goldin
and Cates, a partnership, Charter Advisory Company, a
Florida corporation, Michael Colodny, First City Bank of
Gainesville, Inc., a Florida corporation, formerly known as
Bivins Gardens Bank, Inc., a Florida corporation, Florida
Companies, Inc., a Florida corporation, formerly known as
Guardian Mortgage Investors, a Massachusetts business trust,
Lee E. Hanna, International Hospitality Group, Ltd., a
Maryland corporation, John J. Jennings, Robert Koons, James
F. Lang, Robert F. Lanzillotti, St. Johns Group, Inc., a
Florida corporation, which acquired Charter Investment and
Development Company, a Florida company, The Great American
Bank of Gainesville, Inc., a Florida corporation, formerly
known as University City Bank, a Florida corporation, Larry
G. Turner, a partner of Goldin and Turner, a partnership,
Goldin, Turner and Cates, a partnership, Defendants-Appellees.
 No. 89-3172.
 United States Court of Appeals,
Eleventh Circuit.
 July 31, 1990.
 
 David B. Ferebee, Tassone & Ferebee, Jacksonville, Fla., Andrew J. Michaels, Michaels & McGown, Akron, Ohio, for plaintiffs-appellants.
 Lamar Winegeart, III, Jay Steel, Mahoney, Adams, Milam, Surface & Grimsley, P.A., Jacksonville, Fla., Dock Blanchard, Ocala, Fla., William E. Kuntz, Smith & Hulsey, Jacksonville, Fla., William N. Avera, Avera, Perry & Vloedman, Gainesville, Fla., Terry D. Bork, Boyd & Jenerette, P.A., Harold L. Catlin, Jacksonville, Fla., for defendants-appellees.
 Appeal from the United States District Court for the Middle District of Florida.
 Before KRAVITCH and CLARK, Circuit Judges, and ATKINS*, Senior District Judge.
 CLARK, Circuit Judge:
 
 
 1
 Plaintiffs appeal the district court's dismissal of their civil RICO and pendent state law claims against the defendants on the grounds that the statute of limitations had expired.[1] The several causes of action enumerated in the complaint arise from the alleged wrongful takeover of a corporation in 1975, the mismanagement and wrongful diversion of corporate assets between 1975 and 1981, and the wrongful sale of a partnership's major asset in 1981 for less than its market value. Reasoning that all of the injuries suffered by the plaintiffs arose from the wrongful takeover of the corporation in 1975, the district court held that the statute of limitations on the civil RICO claims had expired in 1979, well before the plaintiffs filed the complaint in 1983. Finding that the complaint alleges injuries to the plaintiffs independent of the injuries suffered as a result of the wrongful takeover of the corporation, and that some of the plaintiffs' civil RICO claims for damages for these injuries are not time-barred and that others may not be time-barred, we reverse in part the district court's dismissal of all claims against all defendants.
 
 BACKGROUND
 
 2
 This case involves five plaintiffs and thirteen defendants. Although the parties tend to lump their opponents together into a single, amorphous group of "plaintiffs" or "defendants," a proper resolution of this appeal requires that we recognize the relationships of the individual parties to each other and to the events that led to the filing of the complaint. Nevertheless, a complete description of each defendant's actions is not necessary for the resolution of this appeal. The following provides a basic outline of the actions of the more important participants in the defendants' alleged scheme to defraud the plaintiffs. Because the district court's order rests entirely on its holding that the claims are time-barred, we assume the facts alleged in the complaint to be true.
 
 
 3
 Sometime in 1969, plaintiff Fred Konstand ("Konstand") formulated a plan for the development of 40 acres of land in Gainesville, Florida. Konstand contemplated a mixed-use development to include condominiums, an office building, a shopping center, and a hotel. To accomplish this purpose, Konstand formed a number of different entities. He incorporated defendant Bivens Center, Inc. ("BCI"), in which he originally owned the majority of the stock, and in which plaintiff James Karns ("Karns") was the largest minority shareholder. BCI became the general partner of Bivens Gardens Hotel, Ltd. ("BGH, Ltd."), a limited partnership formed for the purpose of developing the hotel. BCI owned a one-half interest in BGH, Ltd. and the other half was owned by approximately 20 limited partners, including plaintiff George Malick and plaintiff Malick Investment Company. The limited partnership, BGH, Ltd., held title to the hotel until it was sold in 1981. Konstand also formed plaintiff Bivens Gardens Office Building, Inc. ("Office") to develop the office building. Although the office building was never built, Konstand formed other entities that successfully built condominiums on the property.
 
 
 4
 After obtaining capital contributions from the sale of shares in BCI and limited partnership interests in BGH, Ltd., Konstand arranged additional financing for these various enterprises from a number of sources. Defendant Guardian Mortgage Investors ("Guardian"),[2] a real estate investment trust, was a principal lender. Guardian agreed to lend money to several of the entities, including Office and BGH, Ltd. Konstand and BCI also jointly borrowed $200,000 from defendant University City Bank ("UCB"),[3] which loan was secured by a pledge of 58.07 shares of Konstand's stock in BCI.
 
 
 5
 On October 18, 1974, defendant UCB sent Konstand a notice that the $200,000 loan was in default. The complaint alleges that on February 20, 1975, UCB attorney Selig Golden, defendant Robert Koons (then president of UCB), and defendant Robert Lanzillotti (then chairman of defendant Bivens Gardens Bank[4] and a limited partner in BGH, Ltd.), went to Karns's home and fraudulently obtained a proxy vote from him. That proxy was used later that evening at an improperly called shareholders meeting to oust the directors of BCI, elect new directors, and oust plaintiff Konstand from his presidency and control of BCI. Having gained effective control of BCI, the defendants gained control of the hotel, as BCI was the general partner in BGH, Ltd., the entity formed to develop the hotel. The next day, February 21, 1975, UCB began proceedings against Konstand and BCI to obtain judgment on the defaulted $200,000 loan. UCB soon obtained a state court judgment declaring that Konstand and BCI were in default on the loan and stock pledge agreements. With the court's permission, UCB offered Konstand's 58.07 shares in BCI for sale, and UCB itself purchased those shares at the public sale for $501. At this point, Konstand had lost control of BCI, as he no longer was president and held only 0.93 shares of BCI stock.
 
 
 6
 On May 8, 1975, Konstand filed a lawsuit in state court against six of the defendants in the present action. The other seven defendants in this action are interrelated with those six defendants, as they are all officers, directors, employees, or successors in interest to the six state court defendants. Among other things, Konstand alleged he had not been in default on the $200,000 UCB loan and that UCB and Koons had been part of a conspiracy that had successfully placed "the control, management and cash flow of the hotel in the hands of the defendants" and had "succeeded in removing Konstand from the control" of the hotel. R5-128. Several years later, Konstand amended his complaint in the state court action to add allegations concerning false representations made to him by Koons, UCB and defendant Charter Advisory Co. (advisor to Guardian) for the purpose of removing him as a shareholder, officer, and director of BCI and the hotel. None of the other plaintiffs in the present action were parties to this state court action, and the suit was eventually dismissed for failure to prosecute.
 
 
 7
 In April, 1981, the hotel was sold as part of the bankruptcy reorganization of BGH, Ltd. The plaintiffs in this case contend that several of the defendants misrepresented to the bankruptcy court that both BCI and BGH, Ltd. had given the approval necessary to the sale of the hotel in accordance with their respective shareholder and limited partnership agreements, and that these defendants misrepresented the value of the hotel, such that the hotel was sold pursuant to bankruptcy approval for $1.5 million less than fair market value.
 
 
 8
 The plaintiffs filed this civil RICO action on July 21, 1983. The complaint contains five counts. Count I alleges that all defendants violated the RICO Act, 18 U.S.C. Secs. 1961, et seq., by conspiring to a) take over the ownership of BCI and control of the management and assets of BCI, b) mismanage and divert the assets of BCI and BGH, Ltd. to their own use, and c) wrongfully sell the hotel for less than its fair market value. Count II alleges RICO violations against UCB based on allegations of wire fraud, mail fraud and bankruptcy fraud, and Count III alleges the same violations against Guardian and Charter Advisory Co. Count IV is essentially a state law shareholder derivative action that seeks an accounting and damages against UCB for mismanagement of BCI. Count V alleges that all defendants violated state law by conspiring for the purposes of unlawfully controlling BCI and the hotel and divesting the plaintiffs of interests and positions in various properties of BCI and related entities. All defendants eventually moved for summary judgment on the grounds that the plaintiffs' claims were time-barred. Defendants Guardian and Charter Advisory Co. also contended that the plaintiffs' claims had been discharged in their respective bankruptcy proceedings.[5]
 
 
 9
 The district court order appealed from in this case addresses only the defense of the statute of limitations. The district court held that a civil RICO cause of action accrues when the plaintiff knew or should have known that he suffered an injury. Reasoning that the complaint itself showed that all plaintiffs had known about their injury from the takeover of BCI by May 8, 1975 (the day Konstand filed the state court action), the district court held that the four year statute of limitations for both the civil RICO and state law claims had expired on May 8, 1979.[6] The court further reasoned that the sale of the property in 1981 did not alter the analysis of when the various causes of action accrued.
 
 ANALYSIS
 
 10
 A. The Appropriate Accrual Rule for Civil RICO Claims[7]
 
 
 11
 The district court correctly held that civil RICO actions are subject to a four year statute of limitations. Agency Holding Corp. v. Malley-Duff & Assoc., Inc., 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). Because the acts complained of in Agency Holding had clearly occurred within four years of the filing of the complaint, the Supreme Court expressly left open the question of when a civil RICO cause of action begins to accrue. 483 U.S. at 156-57, 107 S.Ct. at 2767, 97 L.Ed.2d at 121. Nevertheless, federal law determines when the limitations period begins to run in civil RICO actions. Bowling v. Founders Title Co., 773 F.2d 1175, 1178 (11th Cir.1985), cert. denied sub nom. Zoldessy v. Founders Title Co., 475 U.S. 1109, 106 S.Ct. 1516, 89 L.Ed.2d 915 (1986). The present case requires us to decide the appropriate accrual rule to apply when the complaint alleges that, as the result of a conspiracy to violate RICO and substantive violations of RICO, the plaintiffs suffered several independent harms at the hands of the defendants over a period of eight years.
 
 
 12
 The defendants argue that we are bound to follow this Court's ruling in Bowling, 773 F.2d at 1178, that a civil RICO cause of action begins to accrue when the plaintiff knows or should have known that he has been injured. Furthermore, the defendants contend that all of the injuries to the plaintiffs resulted from the original takeover of BCI in 1975, and that the plaintiffs clearly knew they had been injured by May of 1975, as evidenced by Konstand's filing of the state court complaint. Therefore, each plaintiff's claims expired in May of 1979, four years before the complaint was filed in this case. This is essentially the same reasoning that led the district court to conclude that the plaintiffs' claims were time-barred.
 
 
 13
 The plaintiffs argue that the Bowling decision is not controlling, and that the decisions in Bankers Trust Co. v. Rhoades, 859 F.2d 1096 (2d Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 1643, 104 L.Ed.2d 158 (1989), or Keystone Insurance Co. v. Houghton, 863 F.2d 1125 (3d Cir.1988) establish more appropriate accrual rules for the present case. Additionally, the plaintiffs argue that Konstand's filing of the state court complaint in May of 1975 does not indicate that he was aware of a RICO violation, nor does it necessarily indicate that the other plaintiffs knew they had been injured at that time. Moreover, they contend that the complaint in the present case alleges at least three independent injuries suffered by the plaintiffs: 1) the wrongful takeover of BCI, 2) the mismanagement and diversion of corporate assets, and 3) the wrongful sale of the hotel for substantially less than its fair market value.
 
 
 14
 Paragraphs 43 through 64 of the complaint in the present case allege that the defendants conspired together to cause the default of certain loans to BGH, Ltd., Office, and BCI so that defendant UCB could foreclose on the 58.07 shares pledged by Konstand and gain a controlling interest in BCI. These paragraphs allege that the defendants committed various acts of mail and wire fraud between August, 1974 and February, 1975 in furtherance of this scheme. Paragraph 65 of the complaint alleges that between February, 1975 and April, 1981 all of the defendants operated BCI and the hotel so as to divert money and property from BCI and BGH, Ltd. for their own pecuniary gain. Paragraph 73 alleges that in April, 1981 defendants Charter Advisory Co., Guardian, Lanzillotti, and UCB misrepresented to the bankruptcy court that the sale of the hotel had been properly authorized by BCI and BGH, Ltd. and misrepresented the fair market value of the hotel, thus causing the hotel to be sold at a substantial loss against the will of the shareholders of BCI and the limited partners of BGH, Ltd.
 
 
 15
 We agree with the plaintiffs that Paragraphs 65 and 73 allege injuries that are independent from the original injuries flowing from the wrongful takeover of BCI described in Paragraphs 43 through 64. The breach of duties owed to the corporation by various defendants as controlling shareholders, directors and officers of BCI and as limited partners of BGH, Ltd. through mismanagement, diversion of corporate assets, and the unauthorized sale of a partnership asset for substantially less than its fair market value are not included among the injuries that naturally flow from the wrongful takeover of control of a corporation. They involve independent breaches of duties owed by the defendants as corporate directors and officers of BCI, the general partner of BGH, Ltd., to the plaintiffs as shareholders of BCI and limited partners of BGH, Ltd.
 
 
 16
 Our conclusion that the complaint alleges three independent sets of injuries does not resolve the question of whether all of the plaintiffs' claims for damages are time-barred. Although this Court's decision in Bowling is instructive, we agree with the plaintiffs that it is not controlling in the present case. In Bowling, the plaintiffs, a landowner and two real estate brokers, were harmed when a buyer backed out on a deal and the "Earnest Money Time Deposits" the buyer had pledged as earnest money turned out to be worthless. The complaints alleged that the defendant title company had conspired with the buyer to mislead the plaintiffs into believing that the time deposits were valuable and that the buyer was reliable. The various plaintiffs became aware that the transaction had fallen apart at different times, and filed their causes of action at different times. The court announced that "the general federal rule, which provides that the statute of limitations begins to run when a plaintiff knows or should know of the injury, applies in civil RICO cases." 773 F.2d at 1178. With respect to each plaintiff, the court looked to see when he should have discovered that the transaction had fallen through, and held that the statute of limitations began to accrue at that time.
 
 
 17
 The present case presents a different situation, which requires us to expand on the general rule announced in Bowling.[8] In Bowling, the plaintiffs were injured by the defendants on only one occasion, when the buyer failed to close on the transaction and left behind the valueless time deposits. The plaintiffs in the present case suffered more than the injuries caused by the February, 1975 takeover of BCI. They allege continuing and subsequent independent injuries resulting from the continuing mismanagement of the hotel, the operation of BCI, Inc. in violation of certain shareholder agreements, and the sale of the hotel at $1.5 million less than its fair market value in 1981. The plaintiffs allege that these additional injuries arise from a continuing civil RICO conspiracy that began in 1974 and continued through 1981.
 
 
 18
 In Bankers Trust, 859 F.2d at 1096, the Second Circuit confronted a situation very similar to the one presented by this case. The plaintiffs in Bankers Trust alleged three separate incidents of injury: 1) common law fraud and bankruptcy fraud in 1974-76, 2) frivolous lawsuits and bribery in 1978-79, and 3) fraudulent conveyances in 1981-82. The court held that "each time a plaintiff suffers an injury caused by a violation of 18 U.S.C. Sec. 1962, a cause of action to recover damages based on that injury accrues to the plaintiff at the time he discovers or should have discovered the injury." Id. at 1102. Therefore, the plaintiffs were allowed to recover only for the injuries which they should have discovered within four years of filing their suit. Because the plaintiffs had filed suit in August, 1982, the court remanded the case for the district court to dismiss any claim for injuries they should have discovered prior to August, 1978.
 
 
 19
 The Second Circuit reasoned that this rule of "separate accrual" is supported by the plain language of the RICO statute. Id. Section 1964(c) provides that a "person injured in his business or property by reason of a violation of section 1962" may bring a civil RICO action. 18 U.S.C. Sec. 1964(c) (1988). Therefore, until a person suffers an injury due to a RICO violation, he has no right to sue for damages, and thus a civil RICO cause of action cannot accrue until the person suffers injury. If, "[a]t a later date, a new and independent injury is incurred from the same RICO violation, the plaintiff is again 'injured in his business or property' and his right to sue for damages accrues at the time that he discovered or should have discovered the new injury." Bankers Trust, 859 F.2d at 1103.
 
 
 20
 The court also found that the similarities of the Clayton Act to the civil provision of RICO, explicitly recognized and relied on by the Supreme Court in Agency Holding, supported applying the "separate accrual" rule used for Clayton Act violations to civil RICO violations. Id. at 1103-04. The court noted that in the context of continuing antitrust violations with continuing injuries, each time a plaintiff suffers an injury caused by an illegal act of the defendants, a cause of action accrues to recover damages based on that injury. Id. at 1104 (citing Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971))[9]. Furthermore, the Second Circuit reasoned, the RICO and Clayton Acts are designed to provide remedies for activities which are by their nature continuing and which tend to cause recurrent injuries. Therefore, although the initial RICO or Clayton Act violation may have occurred long ago, plaintiffs should be able to recover for more recent injuries resulting from those violations within four years of the time they discovered or should have discovered the injury. Id. at 1105.
 
 
 21
 In addition to arguing that the Bankers Trust rationale provides a more appropriate accrual rule for the present case than Bowling, the plaintiffs urge us to apply the accrual rule announced by the Third Circuit in Keystone Insurance Co. v. Houghton, 863 F.2d 1125 (3d Cir.1988). In Keystone, the court reasoned that because no RICO cause of action arises until two predicate acts are committed,[10] a plaintiff should be able to recover for injuries resulting from a predicate act outside of the four year statute of limitations, as long as the last predicate act or injury occurred within four years of filing suit. The court articulated the rule in the following way:
 
 
 22
 [T]he limitations period for a civil RICO claim runs from the date the plaintiff knew or should have known that the elements of a civil RICO cause of action existed, unless, as a part of the same pattern of racketeering activity, there is further injury to the plaintiff or further predicate acts occur which are part of the same pattern. In that case, the accrual period shall run from the time when the plaintiff knew or should have known of the last injury or the last predicate act which is part of the pattern of racketeering activity. The last predicate act need not have resulted in injury to the plaintiff but must be part of the same pattern.
 
 
 23
 Id. at 1130 (emphasis added). Under this rule, the plaintiffs argue, because the last predicate act (bankruptcy fraud) occurred in 1981, they are entitled to recover for injuries resulting from all prior predicate acts which are part of the same pattern of racketeering activity. Thus, they would be entitled to full recovery for the wrongful takeover of the hotel in 1975, the mismanagement and wrongful diversion of corporate assets between 1975 and 1981, and the improper sale of the hotel in 1981.
 
 
 24
 The Keystone court held that because one of the elements of a RICO violation is the conducting of the affairs of an enterprise through a "pattern" of racketeering, the discovery rule should be applied to the pattern element as well as the injury element of a civil RICO cause of action. The court reasoned that before a civil RICO cause of action can begin to accrue, "[p]laintiffs must not only be in a position where they know or should know of their injury, they must also be in a position where they know or should know that the predicate act causing [their] injury is part of a pattern of racketeering." Keystone, 863 F.2d at 1130. The court rejected the application of the Clayton Act accrual rule adopted by the Bankers Trust court because it fails to recognize that a plaintiff has no RICO cause of action until a "pattern" of racketeering activity has developed. Id. at 1134. For example, under the Bankers Trust accrual rule, a plaintiff who suffers injury from the first predicate act, and who is injured by a second predicate act five years later, will not be able to recover for damages from the first predicate act, even though the "pattern" was not established until the second predicate act occurred.
 
 
 25
 We agree with the Keystone court that the "separate accrual" rule applied by the Bankers Trust court fails to recognize that an injury to a plaintiff from a single predicate act does not evolve into a civil RICO injury until a "pattern" of racketeering activity has developed. In Agency Holding, the Supreme Court emphasized that "the heart of any RICO complaint is the allegation of a pattern of racketeering." 483 U.S. at 154, 107 S.Ct. at 2766, 97 L.Ed.2d at 121 (emphasis in original). We therefore join the Keystone court in holding that the discovery rule should be applied to the pattern element of a civil RICO cause of action. Thus, with respect to a plaintiff injured by one or more predicate acts, a civil RICO cause of action for damages will not accrue until the plaintiff knows, or should have known, of his injury and that the injury is part of a pattern of racketeering activity. A plaintiff who has been injured by one predicate act might discover a pattern when he is again injured by a related predicate act, or when he discovers that someone else has been injured by a related predicate act.
 
 
 26
 The plaintiffs argue that under the "last predicate act" rule applied in Keystone, they are entitled to recover civil RICO damages for all injuries from 1975 on, as long as the last predicate act committed by the defendants occurred within four years of the time they filed suit. We disagree. The Keystone case involved a pattern of insurance fraud perpetrated over several years by five defendants against several insurance companies, one of which was Keystone Insurance Company ("Keystone"). One of the defendants submitted a fraudulent claim to Keystone in 1977. At that time Keystone suspected fraud, but eventually settled the claim with the defendant. In 1980, another defendant submitted a fraudulent claim to Keystone. In late 1980 or early 1981, Keystone discovered that this second defendant had made fraudulent claims against other insurance companies. In 1981, Keystone discovered that this second claim was fraudulent, and referred it to the Insurance Crime Prevention Institute. As a result of the ensuing investigation, a group of five persons who assisted one another in filing fraudulent insurance claims was discovered. The persons who submitted the 1977 and 1980 claims to Keystone were a part of this group. Each of the five defendants was eventually indicted and convicted of mail fraud charges relating to the 1977 and 1980 fraudulent claims, and other claims submitted to other insurance companies. The last fraudulent act for which the group of five was convicted was the mailing of a claim to an insurance company other than Keystone in 1983. The five defendants were sentenced in June of 1986, and Keystone filed its civil RICO action against them one month later.
 
 
 27
 The court found that the fraudulent claim made against another insurance company by the defendants in 1983 was part of the same pattern of racketeering that caused injury to Keystone as a result of the 1977 and 1980 fraudulent claims. Thus, because the "last predicate act" that was part of the same pattern of racketeering activity occurred in 1983, Keystone's complaint filed in 1986 to recover for its injuries relating to the 1977 and 1980 claims was not time-barred. Keystone, 863 F.2d at 1135. However, the court expressly declined to make any analysis of when Keystone knew or should have known that the 1977 and 1980 claims were part of a pattern. Id. at 1127 n. 2. Therefore, the plaintiffs argue, under Keystone, as long as a plaintiff can identify one predicate act that occurred within four years of the filing of the complaint, the question of when the plaintiff discovered, or should have discovered that his injury was part of a pattern of racketeering activity is irrelevant.
 
 
 28
 To the extent that Keystone can be read to support such a proposition, it flows from a situation that is distinguishable from the facts of the present case. The plaintiff in Keystone was one of many victims of a widespread scheme to defraud numerous unrelated insurance companies. Thus, to establish that the defendants engaged in a pattern of racketeering activity, Keystone relied in part on predicate acts that caused harm only to other insurance companies. In contrast, the plaintiffs in the present case allege that each predicate act committed by the defendants caused them harm. Under these circumstances, we find it appropriate to analyze when each plaintiff knew or should have known that his injuries were the result of a pattern of racketeering activity when determining when each plaintiff's civil RICO cause of action began to accrue.
 
 
 29
 We hold, therefore, that with respect to each independent injury to the plaintiff, a civil RICO cause of action begins to accrue as soon as the plaintiff discovers, or reasonably should have discovered, both the existence and source of his injury and that the injury is part of a pattern. The application of the discovery rule to both the injury and pattern elements of the civil RICO claim properly advances the broad remedial nature of civil RICO.[11] Because a civil RICO plaintiff must prove that his injury is part of a pattern of racketeering activity, an injured party must know, or have reason to know, that his injury is part of a pattern before he can be expected to file a civil RICO cause of action. This rule also furthers the purposes of the four year statute of limitations for civil RICO claims established by the Supreme Court by requiring plaintiffs to pursue the civil RICO remedy within four years of the time when they discovered, or reasonably should have discovered, that they are entitled to civil RICO damages for their injury.
 
 
 30
 B. Application of the Accrual Rule to the Present Case
 
 
 31
 Having established the appropriate accrual rule for civil RICO claims, we turn now to consider when the plaintiffs' claims in the present case began to accrue. A comparison of the state court complaint filed by plaintiff Konstand in May of 1975 and the complaint filed in the district court in 1983 leads to the inescapable conclusion that as early as May of 1975, plaintiff Konstand was aware that he had been injured by the defendants' actions in taking over control of the hotel, and that the injury entitled him to civil RICO damages. Paragraphs 43 through 64 of the federal court complaint describe numerous acts of mail and wire fraud alleged to have been perpetrated by the defendants between August, 1974 and February, 1975. Although not described as "mail fraud" or "wire fraud", these same acts of fraud form the basis of Konstand's May, 1975 state court complaint. Furthermore, the same defendants are named in both the state and federal complaints.[12] Clearly, plaintiff Konstand was aware in 1975 that he had been injured by the fraudulent acts of the defendants in 1974 and 1975.
 
 
 32
 The state court complaint also shows that plaintiff Konstand was aware in 1975 of a "pattern of racketeering activity" related to the takeover of control of the hotel. To establish a pattern of racketeering activity, plaintiffs must prove that the defendant(s) committed at least two related predicate acts that amount to, or threaten, continued criminal activity. H.J., Inc. v. Northwestern Bell Telephone Co., --- U.S. ----, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989). The state court complaint reveals that Konstand was aware in 1975 that he had been the victim of multiple fraudulent acts at the hands of the defendants and that these fraudulent acts were related and threatened continuing fraud, in that the common goal of these acts was to allow the defendants to permanently take control of the hotel. Therefore, we hold that plaintiff Konstand's civil RICO cause of action for any damages he suffered in connection with the defendants' alleged wrongful takeover of control of BCI, BGH, Ltd. and the hotel began to accrue no later than May, 1975. Because the present complaint was filed in 1983, plaintiff Konstand's cause of action for civil RICO damages from the takeover of the hotel in 1975 is time-barred.
 
 
 33
 The district court assumed, without explanation, that the other plaintiffs in this action shared in Konstand's knowledge of the fraudulent acts allegedly committed by the defendants in connection with the 1975 takeover. Because Konstand was the sole shareholder of plaintiff Office, the corporation formed by Konstand to develop the office building, imputation of Konstand's knowledge to plaintiff Office is appropriate. Therefore, the district court's order dismissing the civil RICO claims of plaintiffs Konstand and Office with respect to any injury they may have suffered from the alleged wrongful takeover of the hotel is affirmed. Plaintiff Konstand's state court complaint filed in May, 1975 clearly reveals that he and his wholly-owned corporation Office were aware in 1975 that their injury was the result of a pattern of racketeering activity.
 
 
 34
 However, while plaintiff Konstand was clearly the originator and leader of the entire development project, his knowledge cannot be automatically imputed to minority shareholders of BCI such as plaintiff Karns, or limited partners in BGH, Ltd. such as plaintiffs Malick and Malick Investment Company. Our review of the record in its current state indicates that these plaintiffs' involvement in the project was mostly through the contribution of capital, and that they had little, if any, involvement in the daily operations of BCI and BGH, Ltd. The record is unclear as to when they became aware, or reasonably should have become aware, of the alleged fraudulent acts perpetrated by the defendants. The defendants have offered no evidence other than the filing of the state court complaint by plaintiff Konstand to show that these plaintiffs were aware, or should have been aware, that they had been defrauded by the defendants, or that the fraud was the result of a pattern of racketeering activity. Therefore, the district court erred in dismissing the claims of plaintiffs Karns, Malick and Malick Investment Company for damages resulting from the allegedly wrongful takeover of the hotel in 1975.
 
 
 35
 With respect to injuries allegedly suffered by all five plaintiffs as the result of the various defendants' mismanagement of and diversion of the assets of BCI between 1975 and 1981, our conclusion that these acts involve alleged injuries that are separate and independent from injuries flowing from the wrongful takeover of the hotel requires that the district court's dismissal of the plaintiffs' claims for civil RICO damages flowing from these acts be reversed. Under the accrual rule we announce today, dismissal of claims for civil RICO damages flowing from these acts on statute of limitations grounds would only be proper if, with respect to each plaintiff, it was shown that the plaintiff knew, or should have known, more than four years prior to filing the complaint that he had suffered an injury and that the injury was the result of a pattern of racketeering activity.
 
 
 36
 Finally, with respect to the plaintiffs' claims for damages flowing from the wrongful sale of the hotel in 1981, we find that none of the five plaintiffs could have known about this injury, or that it was part of a pattern of racketeering activity, prior to 1981. Thus, because the complaint was filed in 1983, the plaintiffs' causes of action for civil RICO damages flowing from this allegedly wrongful act are not time-barred.
 
 
 37
 The district court order appealed from dismissed all of the plaintiffs' claims against all defendants solely on the grounds that the claims were barred by the statute of limitations. In support of their statute of limitations defense, the defendants contended that all the injuries claimed by the plaintiffs flowed from the original takeover in 1975, and that in 1975 all plaintiffs shared in the knowledge of plaintiff Konstand evidenced by his state court complaint. As explained above, we find both of these arguments insufficient to establish that all of the plaintiffs' claims against the defendants are time-barred. Thus, with respect to the statute of limitations defense, the defendants have failed to carry their burden of showing that they are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (Holding that burden on moving party is to show that there is an absence of evidence to support the nonmoving party's case.)
 
 
 38
 Defendants Guardian and Charter Advisory Company argued in their motions for summary judgment that their respective discharges in bankruptcy precluded any of the plaintiffs from recovering damages from them for any of the injuries alleged in the complaint. Defendants MIMMI and Charter Advisory Company also argued that because they had not had any contact with any of the parties to this litigation since 1975 and 1977 respectively, well over four years before the filing of the complaint, they could not be liable to the plaintiffs for any of the injuries alleged in the complaint. These defendants raise these same arguments on appeal. In light of the fact that the district court's order rested entirely on its conclusion that all claims against all defendants were time-barred, these issues are not ripe for appeal.
 
 CONCLUSION
 
 39
 Having determined that plaintiff Konstand's and plaintiff Office's civil RICO causes of action against the defendants for the wrongful takeover of the hotel expired in 1979, we affirm the district court's grant of summary judgment to the defendants only to the extent that it dismisses those claims. We find, however, that the plaintiffs have alleged independent subsequent injuries resulting from the mismanagement and diversion of corporate assets and the wrongful sale of the hotel.[13] Because we hold that with respect to all other civil RICO injuries alleged by the plaintiffs, the defendants failed to show that each plaintiff knew or should have known more than four years prior to filing the complaint both that they had suffered an injury and that the injury resulted from a pattern of racketeering activity, we reverse the remainder of the district court's grant of summary judgment to the defendants, and remand for further proceedings consistent with this opinion.[14]
 
 
 40
 AFFIRMED in part, REVERSED in part, and REMANDED.
 
 
 
 *
 Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation
 
 
 [1]
 With respect to the pendent state law claims, the district court ruled that they were also barred by the state statute of limitations, or in the alternative, should be dismissed because the court lacked subject matter jurisdiction once the federal causes of action had been dismissed
 
 
 [2]
 Defendant Florida Companies, Inc. is the successor to Fairfield Communities, Inc., which was the successor to Guardian Mortgage Investors
 
 
 [3]
 Defendant Barnett Banks of Florida, Inc. owns defendant The Great American Bank of Gainesville, which is the successor to University City Bank
 
 
 [4]
 Defendant First City Bank of Gainesville is the successor to Bivens Gardens Bank
 
 
 [5]
 Defendant Charter Advisory Co. filed for bankruptcy in 1984, and an order confirming its bankruptcy plan was filed on January 15, 1987. Defendant Guardian filed for bankruptcy in March, 1978, and an order confirming its bankruptcy plan was filed on December 20, 1978
 
 
 [6]
 The district court found that the state law shareholders' derivative action and civil conspiracy action are also subject to four year statutes of limitations
 
 
 [7]
 The accrual rule applied to criminal RICO conspiracy cases is not applicable to civil RICO claims. To establish a criminal violation of the RICO conspiracy statute, the government need only prove the existence of a criminal conspiracy within the limitations period, regardless of whether any overt acts in furtherance of the conspiracy were committed within the limitations period. United States v. Coia, 719 F.2d 1120, 1124 (11th Cir.1983), cert. denied, 466 U.S. 973, 104 S.Ct. 2349, 80 L.Ed.2d 822 (1984). In contrast, a plaintiff's cause of action for civil RICO conspiracy arises not from the mere existence of a conspiracy, but from the commission of an overt act in furtherance of the conspiracy that causes injury to the plaintiff. Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496-97, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985) ("[A] defendant who violates [RICO] is not liable for treble damages to everyone he might have injured by other conduct, nor is the defendant liable to those who have not been injured.") (citation omitted)
 
 
 [8]
 We note also that Bowling was decided without the benefit of the Supreme Court's analysis of the civil RICO statute in Agency Holding, while the Bankers Trust and Keystone cases discussed below were decided after Agency Holding
 
 
 [9]
 When a plaintiff suffers injuries over a period of time greater than four years, the Clayton Act accrual rule works as follows. "[W]here defendants are alleged to have committed acts injurious to a plaintiff pursuant to an unlawful conspiracy, and where the defendants committed some such acts more than four years before the plaintiff commenced suit, and other such acts less than four years before the plaintiff commenced suit, the plaintiff is allowed to recover damages resulting only from those acts committed less than four years before commencement of his suit." Imperial Point Colonnades Condominium v. Mangurian, 549 F.2d 1029, 1034 (5th Cir.) (citing Poster Exchange, Inc. v. National Screen Service Corp., 517 F.2d 117 (5th Cir.1975)), cert. denied sub nom. Mangurian v. Thompson, 434 U.S. 859, 98 S.Ct. 185, 54 L.Ed.2d 132 (1977)
 
 
 [10]
 To establish a civil RICO cause of action under 18 U.S.C. Sec. 1964(c), the plaintiff must prove that the defendant(s) (1) caused injury to the plaintiff's business or property as the result of (2) the conduct of (3) an enterprise (4) through a pattern (5) of racketeering activity. Sedima, 473 U.S. at 496, 105 S.Ct. at 3285, 87 L.Ed.2d at 346. The RICO Act defines a "pattern" as requiring at least two acts of "racketeering activity", and defines "racketeering activity" in terms of violations of certain state and federal criminal statutes. 18 U.S.C. Sec. 1961 (1988). Acts of "racketeering activity" are commonly referred to as "predicate acts."
 
 
 [11]
 The Supreme Court describes RICO as "an aggressive initiative to supplement old remedies and develop new methods for fighting crime." Sedima, 473 U.S. at 498, 105 S.Ct. at 3286, 87 L.Ed.2d at 346 (citations omitted). The language of the statute, as well as "Congress' self-consciously expansive language and overall approach" mandate that RICO is to be read broadly. Id. at 497-98, 105 S.Ct. at 3285-86, 87 L.Ed.2d at 346
 
 
 [12]
 The state court complaint names six defendants, all of whom are also named as defendants in the federal complaint. The other seven defendants named in the federal complaint are interrelated with the six state court defendants, as they are all officers, directors, employees, or successors in interest to the six state court defendants
 
 
 [13]
 The district court dismissed the two state law causes of action on the grounds that the same reasoning applied to the state law claims as to the civil RICO claims, or, in the alternative, because the federal claims were due to be dismissed the court lacked jurisdiction to adjudicate the state claims. Because we hold that the complaint alleges three independent injuries, rather than one injury in 1975, we reverse the district court's dismissal of the state law claims, and remand with instructions to reconsider the time of accrual of the state law claims. Our holding is limited to the establishment of the appropriate accrual rule to be applied to the civil RICO causes of action, and we leave to the district court on remand the determination of the appropriate accrual principles to be applied to the pendent state law claims
 
 
 [14]
 The district court order rested entirely on its holding that the claims were time-barred. Therefore, we have assumed throughout our consideration of this case that the complaint sufficiently alleges the elements necessary to support the plaintiffs' civil RICO and state law claims. This opinion holds only that some of the plaintiffs' civil RICO claims are not time-barred, and that the record is not sufficiently developed for a determination of whether others may be time-barred. We express no opinion as to the sufficiency of the pleadings with respect to the timely civil RICO claims, the various plaintiffs' standing to bring those claims, nor the substantive merit of the claims