David S. FORBES, et al.

v.

R. Alan EAGLESON, et al.

No. Civ.A. 95–7021.

United States District Court, E.D. Pennsylvania, Philadelphia Division.

Dec. 7, 1998.

---

Alice W. Ballard, Samuel & Ballard, P.C., Philadelphia, PA, Martin Oberman, Chicago, IL, Edward Garvey, Garvey and Associates, Madison, WI, for plaintiffs.

R. Alan Eagleson, Toronto, Canada, pro se.

Michael A. Cardozo, Steven C. Krane, Thomas C. Moore, Proskauer, Rose, Goetz & Mendelsohn, New York City, Shepard Goldfein, Frank Rothman, Skadden, Arps, Slate, Meagher & Flom, New York City, Bennett G. Picker, Stradley Ronon Stevens & Young, LLP, Philadelphia, PA, for The National Hockey League, John Ziegler, and William W. Wirtz .

Bennett G. Picker, Stradley, Ronon, Stevens & Young, Philadelphia, PA, for defendants.

## MEMORANDUM AND ORDER

O'NEILL, District Judge.

Plaintiffs, former National Hockey League players, initiated this RICO action on November 7, 1995. By Memorandum and Order dated August 27, 1998,[1] I granted summary judgment to the "NHL defendants"[2] and R. Alan Eagleson as to plaintiffs' Count I claims for injuries incurred prior to November 7, 1991 on grounds that such claims are barred by the four-year statute of limitations for civil RICO actions. I also dismissed plaintiffs' Count I claims for injuries incurred after November 7, 1991 for failure to state a claim upon which relief could be granted. See Fed.R.Civ.Proc. 12(b)(6). In light of the latter ruling, plaintiffs now seek leave to amend their complaint for the fifth time to

1. The factual background and present procedural posture of this case are set forth at length in the previous opinion and will not be repeated here. See Forbes v. Eagleson, 19 F.Supp.2d 352 (E.D.Pa.1998).

2. The National Hockey League, the NHL Member Clubs, John Ziegler, and William W. Wirtz.

properly plead claims for injuries incurred after November 7, 1991.

## I.

■ Whether or not to grant leave to amend is within the Court's sound discretion, but leave "shall be freely given when justice so requires." Fed.R.Civ.Proc. 15(a). The "touchstone" for denying leave to amend is prejudice to the defendant. *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413–14 (3d Cir.1993). Absent prejudice, leave to amend should be granted unless plaintiffs have acted with bad faith, dilatory motives, or "truly undue or unexplained" delay, have repeatedly failed to cure the deficiency in their complaint through previous amendments, or propose amendments that would be futile. *Id.* at 1414; *see also Smith v. National Collegiate Athletic Assoc.*, 139 F.3d 180, 190 (3d Cir. 1998); *Adams v. Gould Inc.*, 739 F.2d 858, 867–68 (3d Cir.1984).

### A. Undue Delay

■ Defendants first contend that leave to amend should be denied because plaintiffs have unduly delayed in seeking to assert allegations of which they should have known long before. They point out that plaintiffs seek to amend their complaint for a fifth time nearly three years after this action was originally brought and more than two years after the statute of limitations was raised as a major issue in this litigation.

To the extent this case has proceeded more slowly than is usual, however, it is not because of any dilatory tactics by plaintiffs but because of factors out of plaintiffs' control or for which they could not be faulted, including preliminary jurisdictional issues raised by defendants, numerous agreements by the parties to extend briefing and pleading deadlines (frequently for defendants' benefit), and the stay imposed on proceedings in this case at the request of several defendants from July 1996 to January 1998 due to the criminal indictment pending against defendant Eagleson. Nor is there anything unusual or "undue" about plaintiffs' present attempts to replead their claims following the

Court's dismissal of them under Rule 12(b)(6). This is the first time plaintiffs have sought leave to elaborate upon allegations concerning their post-November 1991 claims.[3] Finally and most important, defendants fail even to claim, much less demonstrate, that they would be prejudiced by plaintiffs' purported delay if leave to amend were granted. Accordingly, I will not refuse plaintiffs leave to amend their complaint because of their alleged delay.

### B. Futility

Defendants next contend that leave to amend should be denied because the proposed amendments would be futile—that is, unable to withstand another motion to dismiss under Rule 12(b)(6). *See, e.g., Smith*, 139 F.3d at 190; *Gasoline Sales, Inc. v. Aero Oil Co.*, 39 F.3d 70, 74 (3d Cir.1994). Defendants argue the proposed amendment fails to state any claim that survives the statute of limitations bar established by my previous summary judgment ruling because plaintiffs fail to allege either "new and independent" injuries or new predicate acts occurring after November 7, 1991.

I doubt that to state timely RICO claims plaintiffs would be required to allege that new predicate acts, as well as new and independent injuries, occurred within the limitations period. *See, e.g., Bingham v. Zolt*, 66 F.3d 553, 560 (2d Cir.1995) (plaintiffs may recover for injuries incurred within four years of bringing suit, regardless of when the RICO violations that caused those injuries occurred); *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1102–03 (2d Cir.1988) (holding that a civil RICO claim does not accrue until the plaintiff is injured by the RICO violation), *cited with approval by Glessner v. Kenny*, 952 F.2d 702, 707–08, 708 n. 5 (3d Cir. 1991), *overruled on other grounds by Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., Inc.*, 46 F.3d 258 (3d Cir.1995); *cf. Keystone Ins. Co. v. Houghton*, 863 F.2d 1125 (3d Cir.1988) (holding that a civil RICO claim accrues when plaintiff discovers or should have discovered, *inter alia*, that he or she has been injured), *overruled on other grounds by*

---

**3.** Moreover, dicta in my July 23, 1996 opinion may have reasonably led plaintiffs to believe they had sufficiently alleged post November 1991 claims. *See supra* note 5.

*Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997). I need not decide the point, however, because plaintiffs have clearly alleged that new predicate acts occurred after November 1991. *See e.g.,* Proposed Am. Comp. ¶¶ 16, 38, 40; *see also* Court's Mem. Op. of July 23, 1996, 1996 WL 420829, at *3 (finding plaintiffs had alleged predicate acts continuing through December 31, 1991).[4]

The question, then, is whether plaintiffs' proposed amendments sufficiently allege new and independent injuries incurred within the limitations period.[5] *See Glessner,* 952 F.2d at 708. Of plaintiffs' proposed additions and amendments to the complaint (Proposed Am. Comp. ¶¶ 16, 51(a), (b), 52, 64), paragraphs 51(b) and 52 speak to new and independent injuries incurred after November 7, 1991 due to Eagleson's and the NHL defendants' alleged racketeering activity:

51(b). Eagleson's actions and failures to act referred to [in] paragraph 51(a) above, which occurred subsequent to November 7, 1991, included but were not limited to:

1) failing to have the NHLPA adequately prepared for collective bargaining negotiations at a time when the NHLPA's previous collective bargaining agreement had expired and preparations were underway to negotiate a new agreement with the NHL and the Member Clubs;

2) failing aggressively to represent the players' interests with the NHL and the

---

**4.** I dismissed plaintiffs' claims for post-November 1991 injuries pursuant to Rule 12(b)(6) not because plaintiffs failed to allege predicate acts within the limitations period but because they failed to allege how defendants' alleged RICO violations had injured them above and beyond the injuries caused prior to November 1991 by the allegedly collusive collective bargains negotiated by Eagleson and the NHL defendants, the last of which expired in September 1991. *Cf. McCool v. Strata Oil Co.,* 972 F.2d 1452, 1466 (7th Cir.1992) (unlike criminal RICO, which punishes participation in a racketeering scheme, "a civil RICO claim depends on the existence of an injury: as in playground basketball, the rule is 'no blood, no foul' "). I stated:

> Plaintiffs argue that Eagleson and the NHL defendants, pursuant to their alleged arrangement, may have undermined Goodenow's collective bargaining negotiations and even contributed to an April 1992 strike by the players. However, other than the general allegation that the players' compensation was artificially suppressed from the mid–1970's through the end of 1991 (Comp.¶ 54), there are no allegations in plaintiffs' fourth amended complaint of such injury or of such wrongdoing. Accordingly, ... I will dismiss the remainder of Count I for failure to state a claim upon which relief may be granted.

19 F.Supp.2d at 377.

**5.** Plaintiffs contend that in the earlier ruling, *see* 1996 WL 420829 (E.D.Pa. July 23, 1996), I expressly construed their complaint as sufficiently alleging claims arising after November 7, 1991. (Implicitly, therefore, plaintiffs maintain that the dismissal of their post-November 7, 1991 claims was inconsistent with my previous ruling.) This contention misconstrues the earlier opinion. That opinion addressed the timeliness of plaintiffs' claims under the now-invalidated "last predicate act exception" accrual rule for civil RICO actions established in *Keystone Ins. Co. v. Houghton,* 863 F.2d 1125 (3d Cir.1988). That

exception allowed civil RICO plaintiffs to maintain what would otherwise have been untimely claims for injuries incurred prior to the limitations period if they could show that defendants committed one or more predicate acts within the limitations period—acts which need not have caused *plaintiffs injury*—that were part of the same pattern of racketeering activity which had injured plaintiffs prior to the limitations period. *See id.* at 1130. I concluded that plaintiffs had alleged such predicate acts and therefore found that plaintiffs' claims for injuries incurred prior to the limitations period were timely under the *Keystone* accrual rule. 1996 WL 420829 at *4. There was, therefore, no need for me to decide whether plaintiffs alleged "new and independent" injuries within the limitations period. Whether plaintiffs alleged new and independent injuries within the limitations period became an issue only upon my more recent determination that, because plaintiffs could no longer rely upon the "last predicate act" exception after the invalidation of that rule by the Supreme Court in *Klehr v. A.O. Smith Corp.,* 521 U.S. 179, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997), their claims for injuries incurred prior to November 7, 1991 were untimely.

In all fairness to plaintiffs, the 1996 opinion did state that "it would be difficult to conclude" that any economic injuries plaintiffs suffered in late 1991 "could not under any set of facts [consistent with the complaint]" constitute new and independent injuries. 1996 WL 420829, *4, n. 7. In addition to being pure and explicit dicta, however, this statement suggests only that the Court would not have been justified to dismiss plaintiffs' claims with prejudice. Dismissal without prejudice was warranted since there was nothing in the complaint from which it could be inferred that plaintiffs sought to recover for any injuries other than those resulting from allegedly disadvantageous terms of the collective bargaining agreements negotiated by Eagleson.

Member Clubs in the day-to-day administration of the management-labor relationship between the players and the employers; and

3) through at least April, 1992, communicating and working with Ziegler and Wirtz to reduce the bargaining strength of the NHLPA during the then ongoing [sic] negotiations between the NHLPA and the NHL and Member Clubs, by, inter alia, assuring Ziegler and Wirtz that the players would not strike even if the NHL and the Member Clubs refused to acquiesce in the players' bargaining demands, and encouraging the NHL and the Member Clubs, through communications with Ziegler and Wirtz and others, to take actions intended to undermine and embarrass the NHLPA and its bargaining representatives. As a direct consequence of these actions by Eagleson and these communications by Eagleson to Ziegler and Wirtz, the NHL and the Member Clubs undertook actions which did undermine and embarrass the NHLPA and its bargaining representatives, and they pursued a hard-line strategy which ultimately resulted in, inter alia, the players' engaging in a 10 day strike in April, 1992.

52. . . . . In direct consequence of defendants' actions and failures to act occurring subsequent to November 7, 1991, compensation for NHLPA hockey players was artificially and substantially suppressed in comparison to what the levels of compensation would have been had Eagleson, Ziegler, Wirtz, and the NHL and its Member Clubs not engaged in the wrongful conduct set forth in paragraph 51(b). The injuries caused to the players subsequent to November 7, 1991, include, but are not limited to the fact that the players would have obtained greater benefits at a substantially earlier time than they ultimately obtained at the conclusion of the strike which occurred in April, 1992, and may have been successful in avoiding that strike, had Eagleson, Ziegler, Wirtz, and the NHL and its Member Clubs not engaged in the wrongful conduct set forth in paragraph 51(b).

■ Defendants contend these allegations merely assert the continuation of the same pattern of predicate acts and injuries that occurred before November 7, 1991 after that date. Even if so, this does not bar plaintiffs from recovering for new injuries incurred within the limitations period. Under the separate accrual rules applied to RICO claims each new injury accrues anew regardless of plaintiff's knowledge of previous RICO violations and injuries. *See Bankers Trust*, 859 F.2d at 1103 (holding that claims for injuries resulting from RICO violations accrue separately for each injury when the injury was or should have been discovered); *Bivens Gardens Office Building, Inc. v. Barnett Bank*, 906 F.2d 1546, 1554–54 (11th Cir. 1990) (same, except plaintiff must also be in a position to know injury is part of pattern); *Glessner*, 952 F.2d at 707–08 (adopting separate accrual approach of *Bankers Trust* and *Bivens Gardens*). Thus, plaintiffs may recover for new injuries incurred within four years of filing suit even though they were aware long before then that they were being injured by defendants' pattern of racketeering. *Bingham*, 66 F.3d at 560; *see also Klehr*, 521 U.S. 179, 117 S.Ct. at 1990 (analogizing accrual of civil RICO claims to antitrust claims and noting that in the case of "say a price fixing conspiracy that brings about a series of unlawfully high priced sales over a period of years, each overt act that is part of the violation and that injures the plaintiff . . . starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times.") (citation and internal quotations omitted).

■ Plaintiffs may not, of course, recover for what are merely the continuing effects of injuries already sustained and determinable prior to the limitations period. *Compare Glessner*, 952 F.2d at 707–08 (as plaintiffs had known of need for extraordinary servicing of their allegedly defective furnace units by 1984, their expenditures thereafter for additional servicing and, still later, for replacement units were not new and distinct injuries and would not extend the limitations period). The allegations set forth above, however, speak to new injuries that occurred

after November 7, 1991 and could not have been sued upon before that time. As to these injuries, plaintiffs' claims are timely and it would, accordingly, not be futile for plaintiffs to be given leave to amend their complaint.[6]

## II.

In addition to repleading claims for alleged post-November 1991 injuries, plaintiffs' proposed amended complaint continues to assert all the allegations contained in previous iterations of the complaint concerning injuries incurred by plaintiffs prior to November 7, 1991, despite my recent ruling that these claims are time-barred. Plaintiffs purport to have restated all these allegations to insure that their pre-November 1991 claims are not waived on appeal. This contention is patently meritless.[7] The Court's Order granting summary judgment as to plaintiffs' pre-November 1991 Count I claims is a decision which plaintiffs will have the right to contest before the Court of Appeals. There is no need and no authority for plaintiffs to continue to plead these claims before this Court. Accordingly, while plaintiffs will be given leave to amend their complaint consistent with this opinion, their proposed Fifth Amended Complaint is unacceptable.[8]

### ORDER

AND NOW this 7th day of December, 1998, upon consideration of plaintiffs' motion for leave to file a fifth amended complaint and the NHL defendants' objections thereto, it is hereby ORDERED that the motion is GRANTED IN PART and DENIED IN PART. Plaintiffs may amend their complaint, consistent with the principles expressed in the accompanying Memorandum, on or before December 27, 1998.

---

**6.** I note that defendants have challenged the viability of plaintiffs' proposed amended complaint only on grounds that it fails to allege new predicate acts and new and independent injuries within the limitations period. I find these contentions to be without merit, but express no opinion as to the sufficiency of plaintiffs' claims in any other regard.

**7.** The one case plaintiffs cite in support of this contention is inapposite. In *Davenport v. Saint Mary Hospital*, 633 F.Supp. 1228, 1239 (E.D.Pa. 1986), the court, ruling on a Rule 12(b)(6) motion, simply determined that it would not address the legal sufficiency of a claim that had been asserted in the original complaint but was then omitted from an amended complaint since the latter superseded the former.

**8.** Plaintiffs are given notice that leave to amend will not be granted again absent extraordinary circumstances.